**CHRIS & TODD, INC. d/b/a B–R Beverage Company, Plaintiff,**

v.

**ARKANSAS DEPARTMENT OF FINANCE & ADMINISTRATION, Mahlon Martin, Director; Julia Elliott; Roy E. Elliott; and Twin City Bank, Defendants.**

**Roy E. ELLIOTT and Julia Elliott, Counter–Plaintiffs, Third–Party Plaintiffs,**

v.

**CHRIS & TODD, INC. d/b/a B–R Beverage Company, Counter–Defendant,**

**Billy J. Armstrong; Jo Jo Caladera; Bruce Madison; Mark Bradley; Donald Pennington, Third–Party Defendants.**

No. LR–C–88–28.

United States District Court, E.D. Arkansas, W.D.

May 3, 1989.

John Bisco Bingham, North Little Rock, Ark., for plaintiff, and third party defendants Billy J. Armstrong, Jo Jo Caladera, Bruce Madison and Mark Bradley.

Joseph H. Purvis, Donna Smith Galchus, Wallace, Dover and Dixon, Little Rock, Ark., for third-party defendant Donald Pennington.

Overton Anderson, Little Rock, Ark., for Franklin B. Liebling.

R. David Lewis, Little Rock, Ark., for Roy E. Elliott and Julia Elliott.

## ORDER

EISELE, Chief Judge.

Pending before the Court are the counter and third-party defendants' motions for Rule 11 sanctions against Roy E. Elliott, Julia Elliott, and Franklin B. Liebling, the Elliotts' former attorney. The Court will impose Rule 11 sanctions against Mr. Liebling in the amount of $1500.00 to be applied towards the counter and third-party defendants' attorneys' fees and expenses incurred in defending against the Second Amended and Substituted Counter–Complaint and in seeking Rule 11 sanctions.

*Background*

This action began as a complaint for declaratory judgment in the Chancery Court of Pulaski County, Arkansas. Chris and Todd, Inc., the plaintiff in that action, sought to enjoin the Arkansas Department of Finance and Aministration from cancelling its wholesale beer permit and to enjoin the Elliotts from allegedly interfering with its business. The plaintiff also sought to determine the ownership of a $5,000 certificate of deposit. On January 15, 1988, the Elliotts removed to this Court and on January 20, 1988, they filed a Counter–Complaint alleging, among other things, racketeering, extortion, fraud, misrepresentation and blackmail and seeking $250,000 in damages. On January 28, 1988, the Elliotts amended their Counter–Complaint as of right. *See* Fed.R.Civ.P. 15(a).

The counter and third-party defendants filed motions to dismiss on grounds that the Amended Counter–Complaint failed to adequately allege a RICO cause of action. In denying the motions to dismiss the Court stated:

The Court is inclined to dismiss the counter-plaintiffs' RICO claim for the reasons set forth above. However, because the counter-plaintiffs have expressly reserved their right to amend, the Court will allow them fifteen days from the date of this Order to file their amended complaint. The Court is not suggesting that an adequate amended complaint can be filed in accordance with the good faith requirements of Rule 11, Fed.R. Civ.P., but in fairness, it will provide the opportunity.

On April 8, 1988, Mr. Liebling filed a 28 page Second Amended and Substituted Counter–Complaint for the Elliotts. The

Counter and Third–Party defendants immediately filed motions to dismiss and for sanctions under Rule 11. The motions to dismiss were granted on July 29, 1988. On August 9, 1988, the counter and third-party defendants filed a second motion for sanctions. All of the motions for sanctions allege that the Second Amended and Substituted Counter–Complaint filed on April 8, 1988 was interposed to harass and to cause unnecessary delay and expense. The motions further allege that the Elliotts and their attorney unreasonably failed to investigate the factual allegations contained in the April 8th pleading.

On December 16, 1988, the Court directed the Elliotts and their attorney, Mr. Franklin B. Liebling to file affidavits stating the specific factual bases for the allegations in the Second Amended Counter–Complaint. Attached as Exhibit A to the Elliotts' affidavits were copies of a Second Amended and Substituted Counter–Complaint which was verified by the Elliotts on March 24, 1988. That pleading, which was not filemarked, differed substantially from the amended complaint that was actually filed with the Court. First, the document submitted by the Elliotts contains 16 unnumbered pages. However, the document filed with the Court contains 28 numbered pages. Both Complaints were verified by the Elliotts on March 24, 1988. Both contain the same basic allegations. However, the longer document contains additional, and substantially more detailed recitations of those basic allegations. Those details constitute the principal grounds for the sanctions motions now pending before the Court. The Elliotts' affidavits state that the short complaint is "a true and correct copy" of the Second Amended and Substituted Counter–Complaint signed and verified by them on March 24, 1988. Mr. Liebling's affidavit states that most of the allegations of the long complaint were based on information from Mr. and Mrs. Elliott and that the remaining information was provided by certain witnesses including, Ward Phillips, Mike Walker, Tina Walker, James McArthur and Tim Wood.

*Rule 11*

Rule 11 was amended in 1983 to expand the nature of the lawyer certification requirement and to add new sanctions. The amended rule recognizes that the litigation process may be abused for purposes other than delay and encourages greater attention by the courts to pleading and motion abuses and the imposition of sanctions so as to "discourage dilatory or abusive tactics and to help to streamline the litigation process by lessening frivolous claims or defenses." 5 Wright, Miller & Kane, *Federal Practice and Procedure*, § 1331 (Supp.1987). The Rule states as follows:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, *motion, or other paper is signed in viola-*tion of this rule, the court, upon motion or upon its own initiative, *shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

■ The Court recognizes that Rule 11 sanctions are not to be deemed a substitute for an action for malicious prosecution. Such sanctions are not intended to make the moving party "whole" for any and all damages he or she may have sustained by

virtue of the malicious prosecution of a meritless claim. Rather the Court's focus is much more limited: Has Rule 11 been violated? If so, what is needed to deter such conduct in the future? *See e.g.,* T.E. Willging, *The Rule 11 Sanctioning Process* 20–21 (Federal Judicial Center 1988) (Deterrence is the primary purpose for Rule 11.)

■ Having thoroughly reviewed the record, including the motions for sanctions, the parties' affidavits and the testimony given at a hearing held on April 14, 1989, the Court concludes for the following reasons, that Rule 11 sanctions should be imposed against Mr. Franklin B. Liebling:

1. Mr. Liebling failed to make reasonable inquiry into the factual allegations of the Second Amended and Substituted Counter–Complaint filed April 8, 1989. In addition, it appears that certain allegations were made with an improper purpose.

2. Mr. Liebling, although aware of the facts as they were presented to him, and the law as articulated in the Court's Order of March 25, 1988, filed the Second Amended and Substituted Counter–Complaint causing unnecessary delay and needless expense to the counter and third-party defendants and the Court.

In order to understand the Court's rulings one must first read all of the pleadings filed by the Elliotts in this case.

### Failure to Make Reasonable Inquiry into Facts

During the April 14th hearing, the Court heard testimony from the Elliotts and Mr. Liebling regarding the discrepancies in the two amended complaints. Mr. and Mrs. Elliott testified that although they agreed with many of the allegations in the long complaint, they did not read it and were not aware that it had been filed until May, 1988, approximately one month after it was filed. Mr. Liebling, however, testified that on the evening of April 7, 1988, he telephoned Mr. Elliott and read the entirety of

a rough draft of the long complaint to him over the phone. Mr. Liebling further testified that Mr. Elliott told him that he did not have time to read the pleading or to sign a verification and requested that a verification form signed by him and Mrs. Elliott on March 24, 1988, be used for the new filing. Mr. Ward Phillips testified he was in Mr. Liebling's office on the evening of April 7, 1988, and that he observed Mr. Liebling call Mr. Elliott and read from some handwritten notes. Mr. Phillips stated that what Mr. Liebling read was close to, but was not the same as, that which he and Mr. Elliott had written out earlier, that is, the facts as he and Mr. Elliott understood them. Mr. Phillips further testified that the long complaint follows the pattern of what he heard Mr. Liebling read but that it was not entirely the same.

Mr. Elliott denies receiving a telephone call from Mr. Liebling or discussing the long complaint with him. Mr. Elliott testified that he and his wife provided Mr. Liebling with some, but not all, of the allegations in the long complaint. Mr. and Mrs. Elliott deny that they provided Mr. Liebling with the following allegations:

(1) The allegation that Mr. Ward Phillips' life was threatened.

(2) The allegation that Mr. Donald Pennington said that he and Armstrong had made special deals "where a little something extra was given ..."

(3) The allegation that Mr. Mark Bradley and Mr. Jo Jo Caladera are convicted felons.

(4) The allegation that "Mr. Armstrong, Mr. Pennington and Mr. Madison agreed to store various amounts of untaxed cash derived from B & R Beverage and Chris & Todd, Inc., in a walk-in vault in Mr. Armstrong's ranch outside of Searcy, Arkansas."

(5) The allegation that Mr. Mark Bradley and Mr. Jo Jo Caladera threatened to rape Mrs. Elliott.

The Court finds that Mr. Liebling did call Mr. Elliott on the evening of April 7, 1988. The Court further finds that the document

Mr. Liebling read to Mr. Elliott was not the long complaint that was actually filed the following day. The Court also finds that the Elliotts did not provide Mr. Liebling with the information used as the basis for the five allegations just referred to above. The Court concludes that Mr. Liebling did not make reasonable inquiry to determine that such allegations were well-grounded in fact. Apparently, Mr. Liebling embellished the general allegations provided to him by the Elliotts with the detailed allegations of the long complaint. A reasonable inquiry as provided for in Rule 11 would have revealed that there was no basis for many of the allegations. For instance, Mr. Liebling could have easily verified that third-party defendant Jo Jo Caladera is not a convicted felon. Regarding the rape allegation, Mrs. Elliott testified that her comment to Mr. Liebling was that the defendants threatened to "get into her pants." Mrs. Elliott further testified that she told Mr. Liebling that she considered "rape" to be too strong a word for what occurred. The Court certainly agrees. Mr. Liebling's failure to inform the Elliotts of the exact wording of the long complaint is indicative of his indifference to the veracity of the factual allegations in the long complaint. If, as Mr. Liebling contends, the Elliotts were aware that the long complaint was being filed in their behalf, it would have been a small matter to acquire their signatures on a new verification form. Instead, Mr. Liebling read Mr. Elliott something from handwritten notes over the phone and then requested Mr. Elliott's permission to use a verification form from an prior "draft" complaint that was never filed with the Court. The handwritten notes were not brought forward by Mr. Liebling. The Court is convinced that Mr. Liebling did not adequately inform his clients of the new allegations he was making. Finally, the Court notes that much of the language in the long complaint is inappropriate and irrelevant to the thrust of the pleading. For instance, Mr. Liebling's comment at page 22 that "[t]his is a conspiracy to violate the tax laws of this country regarding reporting of income as a violation of the Internal Revenue Code, and an investigation should be made by the Court into this tax evasion issue" adds nothing to the Elliotts' claim. It appears to be nothing more than a gratuitous, irrelevant assertion intended to embarrass or harass.

Although the Court does not believe the Elliotts are free from fault in this matter since they generally went along with, and perhaps encouraged, the approach being taken by Mr. Liebling, it nevertheless concludes, on balance, that an adequate showing that they violated Rule 11 has not been made.

### Expense and Delay

Rule 11 sanctions should not chill creative legal advocacy. However, the Court is of the opinion that instead of practicing creative advocacy, Mr. Liebling attempted to advance a theory of RICO that the Court had already informed him was insufficient and that has been thoroughly rejected by the Eighth Circuit.[1] The Court's Order of March 25, 1988, clearly explains why the Elliotts' counter-complaint was insufficient:

> The counter-complaint is not sufficient to allege a 'pattern of racketeering activity' for two reasons. First, it fails to allege the 'continuity' sufficient to form a 'pattern of racketeering activity' and second, it fails to plead fraud or fraudulent conspiracy with sufficient specificity. [Relying on *Superior Oil v. Fulmer*, 785 F.2d 252 (8th Cir.1986) and Fed.R.Civ.P. 9(b) ].

Mr. Liebling contends that there was a legal basis for pursuing the Elliott's RICO claim:

---

**1.** "Courts are more likely to impose sanctions when a party fails to confront adverse authority and advances an argument that is
 —rejected by an unbroken string of authority (as opposed to an argument relating to a questionable or more complex area); or

—previously rejected by the court in the same or closely related litigation."
T.E. Willging, *supra* p. 494, at 47.

My legal research indicated that there was a disagreement among the circuit courts of appeal regarding the interpretation of and requirements of RICO. My legal research and factual investigation led me to the conclusion that the Elliotts had an arguable cause of action under the interpretation of RICO advanced by some writers and courts. *See e.g., R.A. G.S. Couture, Inc. v. Hyatt,* 774 F.2d 1150 [1350] (5th Cir.1985); *In Re: Gas Reclamation, Inc.,* Sec Litig., 659 F.Supp. 493 (S.D.N.Y.1987); *Morgan v. Bank of Waukegan,* 804 F.2d 970 (7th Cir.1986); *Liquid Air Corp. v. Rogers,* 834 F.2d 1297 (7th Cir.1987); *Medallion Television Enterprise[s], Inc. v. SelecTV [SelecTV] of California,* 833 F.2d 36 [1360] (3rd Cir.1987). My legal research and analysis led me to the conclusion that the Eighth Circuit Court of Appeals decisions cited in this court's orders take a restrictive approach regarding the pattern requirements of RICO. It remains to be seen whether the United States Supreme Court will adopt the restrictive approach of the Eighth Circuit Court of Appeals or one of the more liberal approaches regarding RICO taken by other courts which have taken a more expansive view of RICO.

Affidavit of Franklin B. Liebling, January 3, 1989.

The Court does not dispute that there is a split among the Circuits concerning the definition of the "pattern of racketeering activity" element of the RICO statute and that the Eighth Circuit takes a restrictive view of that element. However, with the facts *and the law* at his disposal, Mr. Liebling chose to press his view of RICO in the Second Amended and Substituted Complaint. The Court's March 25th Order clearly indicated to Mr. Liebling the Court's intention to apply the restrictive Eighth Circuit definition of "pattern of racketeering activity." Given the facts pleaded in the long complaint and the law as provided by the Court, the reasonable thing to do would have been to appeal the "pattern of racketeering" issue to the Eighth Circuit. However, instead of following that approach, Mr. Liebling chose to reassert his view of law in the tortured language of the Second Amended and Substituted Counter–Complaint causing unnecessary delay and needless expense to the counter and the third-party defendants and the Court.

The Court is of the firm opinion that Mr. Liebling's actions in this case constitute a violation of Rule 11. Accordingly, the Court *must* impose an appropriate sanction. *See* Fed.R.Civ.P. 11, *supra* ("If a pleading, motion, or other paper is signed in violation of this rule, the court upon motion or upon its own initiative, *shall* impose ... an appropriate sanction."). The Court finds and concludes that monetary sanctions in the amount of $1500.00 should be imposed to vindicate Rule 11 and to deter future abuses.

IT IS THEREFORE ORDERED that the counter and third-party defendants' motions for Rule 11 sanctions against Mr. Franklin B. Liebling be, and they are hereby, granted.

IT IS FURTHER ORDERED that Rule 11 sanctions in the amount of $1500.00 be imposed against Mr. Franklin B. Liebling, to be divided equally among the counter and third-party defendants for their attorneys' fees and costs incurred in defending against the Second Amended and Substituted Counter–Complaint filed on April 8, 1988 and in pursuing Rule 11 sanctions.

IT IS FINALLY ORDERED that the counter and third-party defendants' motion to remand this action to state court be, and it is hereby, granted.