In re John P. **LADIKA**, Geraldine A. Ladika, Debtors.

John P. **LADIKA**, Debtor—Appellant,

v.

**INTERNAL REVENUE SERVICE,** Creditor—Appellee.

**BAP No. 97–6084EA.**

United States Bankruptcy Appellate Panel of the Eighth Circuit.

Submitted Jan. 13, 1998.

Decided Jan. 30, 1998.

John P. Ladika, Edgemont, AR, pro se.

Carl J. Tierney, Washington, DC, for appellee.

Before KOGER, Chief Judge, KRESSEL, and SCHERMER, Bankruptcy Judges.

KOGER, Chief Judge.

The debtor, John F. Ladika, appeals from a decision by the bankruptcy court[1] to convert the debtors' Chapter 13 case to a Chapter 7 case after a hearing on the motion to convert filed by the Internal Revenue Service. For the following reasons, we affirm.

### FACTS

On February 28, 1997, John P. Ladika and his spouse, Geraldine A. Ladika, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. The filing was precip-

itated by the Internal Revenue Service's (the "IRS") levy upon an investment account owned by the debtors with a balance of approximately $170,000.00 seeking the payment of unpaid income taxes, penalties and interest for tax years 1980 through 1989. In their schedules, the Ladikas listed the IRS as a creditor and the IRS filed a proof of claim asserting a secured claim in the amount of $346,143.00; an unsecured priority claim in the amount of $3971.00; and an unsecured nonpriority claim in the amount of $312,-473.16.

On June 19, 1997, the IRS filed a motion to dismiss the debtors' Chapter 13 case or in the alternative to convert the case to a Chapter 7. On September 4, 1997, the bankruptcy court held a hearing on the IRS's motion to dismiss or convert in addition to hearing a motion for relief from the automatic stay filed by the IRS; a motion filed by the debtors for determination of tax liability; the debtors' objection to the IRS's proof of claim; and an adversary proceeding for the turnover of the funds levied upon by the IRS. At the conclusion of the hearing the bankruptcy court ruled from the bench on all of the foregoing matters. John Ladika appeals only from the bankruptcy court's decision to convert the Chapter 13 case to Chapter 7, which is memorialized in an order filed on September 10, 1997, and which incorporates the reasons stated in open court. Geraldine Ladika did not appeal from any of the bankruptcy court's rulings.[2]

The evidence at the hearing revealed that the debtors did not pay federal income taxes for tax years 1980 through 1989. On September 13, 1990, the debtors voluntarily filed for bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California. In their schedules filed in connection with

---

1. The Honorable James G. Mixon, Chief Judge, United States Bankruptcy Court for the Eastern and Western Districts of Arkansas.

2. Although at the conclusion of the hearing held on September 4, 1997, the bankruptcy court made oral rulings from the bench concerning all of the matters before it at that hearing, the only written order that has been filed with the clerk of the court and which is contained in the record on appeal is the order filed on September 10,

1997, in which the bankruptcy court converted the debtors' Chapter 13 case to a Chapter 7. It appears that the remaining oral rulings have not yet been reduced to written orders that have been filed with the clerk of the court. We will only consider the issues raised in the context of the conversion of the debtors' case and it is not necessary to address the remaining issues raised by the Internal Revenue Service in its brief and by John Ladika in his brief and reply brief.

this Chapter 7 bankruptcy, the debtors listed the IRS as a creditor with a debt in the amount of $389,421.62 for income tax liabilities for tax years 1980 through 1986. The debtors described these tax liabilities as "fictitious and fraudulent concocted by ignorant and dishonest personnel taught to defraud taxpayers to make themselves look as though they were doing a good job." The debtors received a discharge in this no-asset Chapter 7 bankruptcy on January 22, 1991.

In January 1992, John Ladika received a settlement in a personal injury action in the amount of $700,000.00. After paying attorney's fees and reimbursing workers' compensation, John Ladika received the net amount of about $350,000.00 from that settlement. On January 22, 1992, the debtors purchased a home in Cleburne County, Arkansas for $178,000.00 cash. Prior to purchasing the home, the debtors incorporated Ladika Industries, Inc. in the state of Delaware. Ladika Industries, Inc. is a non-operating corporation that does absolutely no business in the state of Arkansas or elsewhere. Although the debtors purchased the home with their personal funds, they titled the home in the name of Ladika Industries, Inc. At the hearing, John Ladika stated that the debtors put the home in the name of Ladika Industries, Inc. because "if my wife and I were to die, it would not be tied up in probate for a couple of years." The debtors have lived in the home continuously since they bought it, and claim this property as their homestead in their 1997 bankruptcy schedules. On March 12, 1992, the debtors bought vacation property in Van Buren County, Arkansas for $900.00 cash. The debtors also titled this property in the name of Ladika Industries, Inc. The debtors invested the rest of the net proceeds of the settlement in an investment account with Pershing, a division of Donaldson, Lufkin & Jenrette Securities Corporation. After the IRS levied on this investment account on February 12, 1997, it received a check for the outstanding balance in the account in the amount of $170,957.81. The IRS was unable to levy on the investment account prior to February 12, 1997, because the municipal bonds in which the debtors invested did not mature until that time. On April 16, 1992,

the debtors deeded their former residence in Orange County, California to one of their sons and his wife. The deed states that "this is a bonafide gift and the grantor received nothing in return." In their 1990 bankruptcy schedules the debtors showed equity of $20,000.00 in this property. At the hearing, John Ladika testified that the debtors transferred the Orange County property for "a handshake and a Hundred Dollars" to their son who also took over the $97,000.00 mortgage. John Ladika stated that at the time of the transfer, the debtors possibly had $50,000.00 equity in the Orange County property.

As mentioned above, the debtors' history with the IRS began with their refusal to pay federal income taxes for tax year 1980. For tax years 1980 through 1989, the debtors refused to pay federal income taxes under the belief that John Ladika "is and was an american [sic] worker on the american [sic] market, not living abroad, and exempt from a direct unapportioned tax." For tax years 1980 through 1986 the debtors did not file federal income tax returns and for each of those years the IRS prepared substitute returns in order to calculate the debtors' income tax liability. For tax years 1987 through 1989 the debtors did file income tax returns upon which the IRS based the debtors' income tax liability for each of those years. The United States Tax Court made determinations of federal income tax liability for tax years 1980, 1981, 1983, 1984, 1986 and 1989 (the "tax court years"). The United States Tax Court decisions for those years were admitted as evidence at the hearing. The tax years 1982, 1985, 1987 and 1988 were non-tax court years. Certified copies of IRS transcripts of the Form 1040 United States Individual Income Tax Accounts of John P. and Geraldine Ladika that showed the income tax due for each of the non-tax court years plus penalties and interest, in addition to transcripts for the tax court years, were admitted as evidence at the hearing. Certified copies of the federal tax liens filed in Cleburne County, Arkansas and Van Buren County, Arkansas were also admitted as evidence in support of the IRS's secured portion of its claim. The IRS transcripts of accounts

do reflect that starting in December 1990, the debtors began making small payments to the IRS on the unpaid income taxes. However, the debtors failed to make even a noticeable dent in the unpaid income taxes, penalties and interest due the IRS. In 1994 the debtors did tender federal income tax returns to the IRS for tax years 1980 through 1986, but the IRS did not process the returns contending that the tax liability for tax years 1980, 1981, 1983, 1984 and 1986 had been previously determined by the United States Tax Court.

In their Chapter 13 plan, the debtors proposed to pay $2,256.00 per month for sixty months and $3,903.00 semi-annually for five years to the Chapter 13 Trustee to fund the plan. The bankruptcy court confirmed the debtors' plan on June 4, 1997. There were no objections to confirmation. The Chapter 13 plan provided that the IRS would be paid $2,106.00 per month on its secured claim, which the debtors showed as $99,102.00. The only other secured creditor listed was Sears, with a secured debt of $1,000.00. The debtors also proposed to apply the $3,903.00 semi-annual payments to the secured claims of the IRS and Sears, and to pay the nonpriority unsecured creditors a 100% distribution. In addition to the IRS, the debtors listed as unsecured nonpriority creditors the City of Orange Finance, Discover Card, Master Card, and the State of California Franchise Tax Board. The IRS is by far the debtors' largest creditor. The debtors showed no unsecured priority creditors in their schedules, and made no provision for the payment of unsecured priority claims in their Chapter 13 plan.

At the September 4, 1997, hearing, the IRS asserted that the debtors' Chapter 13 case should be either dismissed or converted to a Chapter 7 case for several reasons. First, the IRS contended that the debtors could not propose a feasible plan because the plan would require about a $3,500.00 payment per month for 60 months just to pay off the secured portion of the IRS's claim, which the debtors were unable to make. Second,

the IRS argued that the unsecured portion of its claim exceeded the unsecured debt limits for Chapter 13 eligibility.[3] Finally, the IRS argued that the pre-petition actions of the debtors demonstrated that they acted in bad faith by filing the Chapter 13 bankruptcy petition, particularly the 1992 transfer of the Orange County, California property to one of their sons and his wife and the 1992 purchase of the Cleburne County, Arkansas and Van Buren County, Arkansas properties in the name of Ladika Industries, Inc, which the IRS asserted was just an attempt by the debtors to protect their assets from the IRS when they knew they were substantially indebted to the IRS.

At the conclusion of the hearing the bankruptcy court converted the debtors' Chapter 13 case to a Chapter 7 for the following reasons:

> [T]he evidence is, again, substantially, substantial and overwhelming that the debtor, as a tax protestor, filed frivolous returns and made frivolous contentions, and that these penalties are, no doubt, totally warranted.

That being The Court's finding, that the claim [of the IRS] is correct, means that the debtor is not eligible for Chapter Thirteen relief. The question then becomes whether or not to dismiss the case or to convert it to Chapter Seven. I don't think the debtor is proceeding in good faith.

This idea that you can title your personal residence in a non-existent, nonfunctioning corporation for purposes of avoiding probate is absurd. It doesn't accomplish that at all. And the only purpose of titling property in a defunct, nonoperating corporation is to try to hinder and delay and avoid the efforts of the Government to collect their taxes. The Government, unlike creditors in general, has the ability under Federal Law to levy on and sell a debtor's homestead, whereas a regular creditor couldn't do that, a nongovernment creditor couldn't do that in this state.

---

**3.** Section 109(e) of the Bankruptcy Code states in relevant part that "Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $250,000 ... may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e), as amended by the Bankruptcy Reform Act of 1994.

So The Court finds that the personal residence is not corporate property, that this is all a sham, that the residence belongs to the debtor, as does the lot at Fairfield Bay . [in Van Buren County]. That's the debtors' property, not the corporation's. Therefore, the debtor appears here in this Court of Equity acting in bad faith. And that warrants, I think, conversion of the case to a Chapter Seven.

The other reason I want to convert it to Chapter Seven is the debtor has played, I call it, a game with the Internal Revenue Service for all these years, avoiding the payment of taxes, and have no reason to think that the debtor would not continue to engage in this type of cleverness. And, so, if I were to dismiss the case, that would leave the debtor with the option of refiling at strategic points in time, and only frustrate and delay efforts by the Government to levy and foreclose its tax lien on the property that they have pre-Petition lien on. So, the case will be converted to a Chapter Seven.

John Ladika appeals the bankruptcy court's ruling converting the Chapter 13 case to a Chapter 7. In its appellate brief, the IRS candidly admits that it discovered after the case was converted that it incorrectly calculated the amount of the unsecured portion of its claim and concedes that the debtors do meet the debt limit requirements to be eligible to file a Chapter 13 bankruptcy.[4] However, the IRS adamantly maintains that this Court should uphold the bankruptcy court's decision to convert the debtors' case because the evidence shows that the debtors' filed their Chapter 13 bankruptcy petition in bad faith.

### JURISDICTION

John Ladika timely filed his notice of appeal on September 16, 1997. *See* Fed. R. Bankr.P. 8002(a). The bankruptcy court's order converting the debtors' Chapter 13 case to a Chapter 7 case is a final order over which this Court has appellate jurisdiction.

---

**4.** The IRS does not disclose to this Court the correct amount of the unsecured portion of its claim, however, this Court certainly expects the

*See In re Nielsen,* 211 B.R. 19 (8th Cir. BAP 1997).

### ISSUE RAISED ON APPEAL

Because the IRS concedes that the debtors meet the debt limit requirements and are eligible to be in Chapter 13 and the bankruptcy court did not address the feasibility of the debtors' plan, the only issue before this Court is whether the bankruptcy court correctly ruled that the debtors filed their Chapter 13 petition in bad faith thus warranting conversion to Chapter 7.

### STANDARD OF REVIEW ON APPEAL

The bankruptcy court's determination that the debtors acted in bad faith by filing their Chapter 13 bankruptcy petition is a factual finding reviewed under the clearly erroneous standard. *See Noreen v. Slattengren,* 974 F.2d 75, 77 (8th Cir.1992); *Handeen v. LeMaire (In re LeMaire),* 898 F.2d 1346, 1350 (8th Cir.1990); *Nielsen,* 211 B.R. at 21. A bankruptcy court's finding of fact is clearly erroneous when the reviewing court is left with a " 'definite and firm conviction that a mistake has been committed.' " *In re Waugh,* 95 F.3d 706, 711 (8th Cir.1996) (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). The appellant bears the burden of proving that the bankruptcy court's determination was clearly erroneous. *See U.S. Machinery Movers v. Beller,* 280 F.2d 91, 95 (8th Cir.), *cert. denied,* 364 U.S. 903, 81 S.Ct. 236, 5 L.Ed.2d 195 (1960).

### DISCUSSION

Section 1307(c) of the Bankruptcy Code states in pertinent part:

[O]n request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause....

11 U.S.C. § 1307(c). In *In re Molitor,* 76 F.3d 218, 220–21 (8th Cir.1996), the Eighth Circuit Court of Appeals opined:

IRS to file an amended proof of claim with the bankruptcy court as soon as possible, if it has not already done so.

[A] Chapter 13 petition filed in bad faith may be dismissed or converted "for cause" under 11 U.S.C. § 1307(c). *In re Eisen,* 14 F.3d 469, 470 (9th Cir.1994)(per curiam). Such cause includes filing a bankruptcy petition in bad faith. *See, e.g., Matter of Smith,* 848 F.2d 813, 816 n. 3 (7th Cir.1988). The bad faith determination focuses on the totality of the circumstances, specifically: (1) whether the debtor has stated his debts and expenses accurately; (2) whether he has made any fraudulent representation to mislead the bankruptcy court; or (3) whether he has unfairly manipulated the bankruptcy code. *In re LeMaire,* 898 F.2d 1346, 1349 (8th Cir.1990). *See also LeMaire,* 898 F.2d at 1353 (citations omitted) (" '[G]ood faith should be evaluated on a case-by-case basis in light of the structure and general purpose of Chapter 13.' " ... "There are no 'precise formulae or measurements to be deployed in a mechanical good faith equation.' "); *Nielsen,* 211 B.R. at 22 (Additional relevant factors under the totality of the circumstances approach include "the type of debt sought to be discharged and whether such debt is dischargeable in a chapter 7 and the debtor's motivation and sincerity in seeking chapter 13 relief."); *In re Bayer,* 210 B.R. 794, 795–96 (8th Cir. BAP 1997) (discussing the good faith inquiry in the context of appellate review of the bankruptcy court's dismissal of the debtor's Chapter 13 case).

In *LeMaire* the Eighth Circuit opined:

[W]henever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives. If the court discovers unmistakable manifestations of bad faith, as we do here, confirmation must be denied.

Unmistakable manifestations of bad faith need not be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud. *We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse.*

*LeMaire,* 898 F.2d at 1352 n. 8 (alteration in original) (quoting *In re Waldron,* 785 F.2d 936, 941 (11th Cir.1986)).

Here, there is more than ample evidence to support the bankruptcy court's decision to convert the debtors' Chapter 13 case to a Chapter 7 case on the grounds of bad faith. We do not find the bankruptcy court's finding of bad faith to be clearly erroneous. By filing the Chapter 13 petition, the debtors have attempted to unfairly manipulate the Bankruptcy Code in their continued effort to evade the payment of federal income taxes, penalties and interest, which have accumulated from tax years 1980 through 1989. In January 1992, John Ladika received the net amount of approximately $350,000.00 from the settlement of a personal injury action. Instead of paying their debt to the IRS at that time, in January 1992 the debtors moved from California to Arkansas where they used $178,000.00 of the settlement proceeds to purchase homestead property in Cleburne County, Arkansas that they titled in the name of Ladika Industries, Inc., which is a non-operating corporation. The debtors also purchased vacation property in Van Buren County, Arkansas for $900.00, which they likewise titled in the name of Ladika Industries, Inc. Also in early 1992, the debtors transferred the almost $50,000.00 in equity in their former homestead in Orange County, California to one of their sons and his wife for no consideration. The debtors invested a large portion of John Ladika's settlement proceeds in municipal bonds, which did not mature until February 1997. Since at least 1992, the debtors have engaged in a scheme to place their assets beyond the reach of the IRS and the filing of the Chapter 13 bankruptcy petition was just another step in their plot. The debtors' actions "constitute a clear abuse of the legal process set forth in the Bankruptcy Act to aid and assist honest debtors," *see Molitor,* 76 F.3d at 221, and the bankruptcy court correctly put a stop to their sham activities designed to thwart the collection of the income taxes by the IRS.

### CONCLUSION

For the reasons stated, we affirm the decision of the bankruptcy court.