In re James R. **PENNY, Jr.,** Debtor.

**Bankruptcy No. 99–81365.**

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

Jan. 25, 2000.

Peter G. Estes, Jr., Estes, Estes & Gramling, Fayetteville, AR, for Bank of Fayetteville.

Matthew W. Fleming, U.S. Attorney's Office, Fort Smith, AR, for IRS.

Mary E. Green, Attorney at Law, Fayetteville, AR, for debtor.

Kevin P. Keech, Rose Law Firm, Little Rock, AR, for Bank of America.

Cecily Skarda, Wilson & Associates, P.A., Little Rock, AR, for Homeside Lending, Inc.

Jeffrey Hance, Batesville, AR, for David Coop, Chapter 13 Trustee.

P.K. Holmes, Fort Smith, AR, U.S. Attorney.

### MEMORANDUM OPINION

ROBERT F. FUSSELL, Bankruptcy Judge.

Pending before the Court are a chorus of Motions to Dismiss, for Sanctions, and the Court's own Order to Show Cause.[1] For the reasons stated below, the Motions are granted and sanctions shall be imposed.

This Court has subject matter jurisdiction over the above adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

The proceeding is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (O). The following are findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### I. FINDINGS OF FACT

■ The following is a history of the Debtor's Chapter 13 case filings, taken from the Court's files.[2]

*First Chapter 13 filing.* On August 7, 1998 the Debtor filed an incomplete voluntary petition. On August 7, 1998 an Order of deficient filing was entered. The Debtor failed to file schedules, statement of financial affairs, or a Chapter 13 narrative plan. The Debtor was given fifteen days to file these documents. On August 25, 1998 the Debtor filed a Motion to Extend time to file the above documents. On August 25, 1998 the Court entered an Order granting the Debtor's Motion. On August 31, 1998 the Bank of Fayetteville filed a Motion For Relief From Stay. Notice of a First Meeting of Creditors was given to the Debtor to appear on September 9, 1998. The Debtor failed to appear. On September 14, 1998 the Debtor filed all the documents required by the August 25, 1998 Order, including a Chapter 13 plan. The Debtor's First Meeting of Creditors was re-set for November 3, 1998. The Bank of Fayetteville withdrew its Motion For Relief From Stay based on the Debtor's Chapter 13 Plan, which proposed to pay this creditor's claim through the Plan. On September 17, 1998 an Order was entered requiring the Debtor to make monthly payments of $2,862.34 as proposed by the plan. On October 7, 1998 the Internal Revenue Service, through the

---

1. On November 11, 1999, Creditor Bank of America filed a Motion to Dismiss and a Motion for Sanctions. On November 19, 1999, this Court issued an Order to Show Cause Why Sanctions Should Not Be Imposed. On November 29, 1999, Creditor Homeside Lending filed a Motion to Dismiss. On December 1, 1999, the Chapter 13 Trustee filed a Motion to Dismiss.

2. It is a well-settled principle of law that a Court may take judicial notice of its own orders and of records in a case before the court, and of documents filed in another court. Fed.R.Evid. 201; *Elliott v. Papatones (In re Papatones),* 143 F.3d 623, 624 (1st Cir. 1998); *In re Henderson,* 197 B.R. 147, 156 (Bankr.N.D.Ala.1996).

United States of America, filed an objection to the Debtor's Plan. A Motion to Continue the Debtor's First Meeting of Creditors was filed on November 9, 1998 by the Debtor's attorney, who failed to give all creditors notice of the meeting. A Motion to Dismiss the Debtor's Chapter 13 case for failure to make the required payments was filed by the Chapter 13 Trustee and set for a hearing on January 19, 1999 and continued to February 9, 1999. On February 8, 1999 the Court granted the Debtor's Motion to continue the First Meeting of Creditors until March 2, 1999. On February 9, 1999 the Debtor failed to appear at the hearing on the Chapter 13 Trustee's Motion to Dismiss for failure to make the required payments. The evidence presented established that the Debtor had total due at the date of the hearing of $11,449.36 and the Debtor had made no payments since filing the bankruptcy on August 7, 1998. On February 17, 1999 the Debtor's Chapter 13 case was dismissed for failure to make payments.

*Second Chapter 13 filing.* On April 14, 1999 the Debtor again filed a Chapter 13 case with an incomplete voluntary petition. On April 14, 1999 the Court entered an Order of deficient filings including schedules, statement of financial affairs, and a narrative Chapter 13 Plan. On April 22, 1999 a First Meeting of Creditors was set for June 8, 1999. On April 22, 1999 the Bank of Fayetteville filed a Motion to Dismiss. The Motion stated that on April 6, 1999 the Bank obtained a foreclosure decree against the Debtor and thereafter a sale of the real property, as set out in the foreclosure decree, was set for August 10, 1999; that the Debtor on August 7, 1998 filed a Chapter 13 petition in Case No. 98–810465 and as a result thereof, the sale was stayed; that thereafter the Debtor did not make any payments to the Plan as Ordered and the Petition was dismissed on February 17, 1999. Subsequent to the dismissal of the Debtor's bankruptcy, the Bank again set the real property for sale on April 15, 1999 and the Debtor once again filed a Chapter 13 petition and the stay abated the aforesaid sale. A hearing was set on the Motion for May 18, 1999. On May 4, 1999 an Order was entered dismissing the Debtor's case for failure to timely file schedules.

*Third Chapter 13 filing.* On May 21, 1999 the Debtor again filed a incomplete voluntary petition under Chapter 13. On May 21, 1999 an Order of deficient filing was entered. On May 27, 1999 a First Meeting of Creditors was set. On June 3, 1999 the Debtor filed the missing schedules and Chapter 13 Plan.

On June 7, 1999 NationsBank (now Bank of America) filed a Motion to Dismiss the Debtor's case based on a bad faith filing. The Motion asserted that on April 13, 1999 the Bank obtained a foreclosure decree against Indutec Corporation in Washington County Chancery Court, Case No. E99–23. A sale was set for May 25, 1999. On May 21, 1999 the Debtor filed a voluntary petition under Chapter 13. On May 24, 1999 the Debtor filed a copy of selected pages of the Petition with the Washington County, Arkansas Clerk's Office (the "altered Filing"), which depicted different information than reflected in the Petition as follows: James R. Penny, Jr. (Indutec Corporation) Chapter 11 corporation. This pleading was signed by the Debtor. The Bank's Motion contends that the Debtor intentionally altered the Petition to represent to the Washington County Clerk that Indutec had in fact filed a Chapter 11 Petition and, by so doing, to represent that the automatic stay provisions of 11 U.S.C. § 362 were in place to stay the sale pending in the Washington County Chancery Court. The Motion pointed out that on May 6, 1999 Indutec had filed a Voluntary Petition under Chapter 11 Case No 97–80529, which subsequently was dismissed on April 9, 1998.

The Debtor's Chapter 13 Plan in 99–80667 reflects a monthly payment of $713.00 to be made to the Bank of Boston. On June 6, 1999 an Order was entered to pay the trustee $713.00 per month. On

June 23, 1999 NationsBank's Motion to Dismiss was set for a hearing on July 20, 1999. On July 13, 1999 the Debtor attended a First Meeting of Creditors for the first time. On July 16, 1999 an Objection to the Plan was filed by the Chapter 13 Trustee. On July 14, 1999 an Objection to the Plan was filed by Homeside Lending, Inc. On July 16, 1999 an Objection to the Plan was filed by the Internal Revenue Service. On July 20, 1999 the Debtor failed to appear at the hearing on Nations-Bank's Motion to Dismiss. Notice was sent to the address given by the Debtor on his petition. NationsBank introduced documents into evidence at the hearing in support of its Motion. The Court granted the Motion to Dismiss without prejudice. An Order was entered on July 29, 1999 dismissing the Chapter 13 case without prejudice. On August 7, 1999 the Debtor filed a Motion to Vacate the July 29, 1999 Order. On August 12, 1999 the Debtor filed an Amended Motion to Vacate the July 29, 1999 Order and to Reinstate the Case. The Court set the Debtor's Motions for a hearing on September 21, 1999. On August 30, 1999 the Debtor filed a Motion to Withdraw his Motion to Vacate the Court's Order of July 29, 1999 dismissing the case and a Motion to Reinstate the Case. On September 30, 1999 the Court entered Orders granting the Debtor's Motions to Withdraw his Motion to Vacate the July 29, 1999 Order of Dismissal and his Motion to Reinstate the Case.

*Fourth Chapter 13 filing.* On August 18, 1999 the Debtor again filed a incomplete voluntary petition. On August 18, 199 an Order of deficient filing was entered. On August 18, 1999 an Application by the Debtor to pay filing fees in installments on or before first date set for the first meeting of creditors. An Order was entered on August 19, 1999 approving the Application. On August 26, 199 a First Meeting of Creditors was set for October 5, 1999. On August 30, 1999 the Debtor filed his schedules and Plan. On September 3, 1999 an Order was entered for the Debtor to pay trustee $713.00 per month.

On October 5, 1999 a First Meeting of Creditors was held and the Debtor appeared. On October 14, 1999 the Chapter 13 Trustee filed objections to the Debtor's plan and exemptions. On October 14, 1999 an Order was entered dismissing the case for failure to pay filing fee.

*Fifth Chapter 13 filing.* On October 29, 1999, for the fifth time, the Debtor filed an incomplete voluntary petition under Chapter 13. On October 29, 1999 an Order was entered requiring the Debtor to supply the deficient documents. On November 1, 1999 a Motion was filed by Bank of America (formerly NationsBank) to Dismiss the Debtor's Case With Prejudice. The Bank also filed a Motion To Impose Sanctions Upon the Debtor For Attorney Fees and Costs. On November 3, 1999, notice was sent to the Debtor at the address given in his petition setting the Motion on November 16, 1999 at 9:00 a.m. On November 12, 1999 the Debtor filed the deficient documents and a Plan. The Plan reflects a monthly payment of $912.00 for sixty months. However; under "Secured creditors: home mortgage" the plan reflects a monthly payment to Bank of Boston of $800.00 per month and $2,600.00 to Homeside Lending, Inc. Schedules "I" and "J" reflect monthly income of $2,349.00 and monthly expenses of $1,437.00, leaving a monthly payment of $4912.00. On November 16, 1999, a hearing was held on Bank of America's Motion to Dismiss and Motion to Impose Sanctions on the Debtor. Bank of America appeared and presented evidence; the Debtor failed to appear.

In an Order dated November 19, 1999, the Court set an Order to Show Cause on James R. Penny, Jr. for December 21, 1999. The November 19th Order specifically required that the "Debtor show cause why his pending Chapter 13 cases should not be dismissed with prejudice and the Debtor be enjoined from filing another Chapter 13 case or a Chapter 11 case for the period of two years." Order at 1.

At the December 21, 1999 hearing, Mr. Penny appeared, represented by counsel, and testified. He acknowledged that the present petition was his fifth, which he had prepared and filed himself; in two of his other four prior cases, he had been represented by counsel. When questioned as to why he had omitted in the current schedules and statements to list creditors that had been scheduled in his prior cases, he explained that his prior lawyer had been "a bit conservative, but that's what he was paid to do." When asked why he had omitted to list creditors in schedules pertaining to his current petition, Mr. Penny testified that after having "checked with" his creditors in the summer before filing his most recent petition, "some of" them had written off the debts he owed them as "bad," so Penny felt that there was "[n]o reason to include [debts] when they're not for real."

Penny acknowledged that from the date of his first petition on August 7, 1998 to date, he had never paid any of the secured creditors listed in his first petition.

He denied understanding what the automatic stay in bankruptcy is. In response to a question whether, to prevent sale of his property, he had informed a state court that he had filed bankruptcy, he answered merely that he "[didn't] know." In response to a question whether he was aware that his filing bankruptcy prevented his creditors from taking "certain actions" against him, he replied "no." When asked whether his prior attorneys had ever explained the consequences of bankruptcy to him, he replied that they had done so but that "I didn't get it. As a small person, I didn't get into all the contingencies."

The matter was continued to January 7, 2000.

Mr. Penny testified again at the January 7th hearing, again represented by counsel. When questioned more closely as to whether he had intentionally misrepresented the nature of his third bankruptcy to the Washington County Circuit Court, he replied, "[o]f course not. Why would I do that?"

When asked why he had requested reinstatement of his then-dismissed third case, and then moved to set aside his reinstatement request, he responded that he had simply filed a new Chapter 13 petition to "correct errors," and therefore desired the Court to consider his fourth petition and not his third. "Why waste time, when I[had] a new Chapter 13," Penny testified. When asked why he had failed to provide Bank of America with notice in the fourth bankruptcy, Penny responded that the bank debt "had nothing to do with my personal bankruptcy."

When asked where he had derived income during the pendency of his bankruptcies, Penny testified that he had sold "a couple of paintings," the proceeds of which he had not disclosed on grounds that he did not understand what paintings had to do with his bankruptcy. When asked whether he had any more undisclosed collectibles, he testified to items that he had "taken from a temple in Cambodia," consisting of a "brass ding-dong and pigeons and a Buddha." He stated that he had not disclosed these items because he had not understood that he was required to and he offered to instruct his attorney to provide a "list of those little goodies."

## II. CONCLUSIONS OF LAW

### A. Available Sanctions

#### 1. "Bad-faith" dismissal.

██ Chapter 13 cases may be dismissed on a finding of "bad faith." 11 U.S.C. § 1307(c), *Ladika v. IRS (In re Ladika)*, 215 B.R. 720, 724 (8th Cir. BAP 1998). The bad faith determination focuses on the totality of the circumstances, specifically: (1) whether the debtor has stated his debts and expenses accurately; (2) whether he has made any fraudulent representation to mislead the bankruptcy court; or (3) whether he has unfairly manipulated the bankruptcy code. *Ladika*, 215 B.R. at 725, *citing In re LeMaire*, 898

F.2d 1346, 1349 (8th Cir.1990). *See also Molitor v. Eidson,* 76 F.3d 218 (8th Cir. 1996) (debtor's right to dismiss voluntarily is not absolute and may be curtailed by abuse); *In re Casteel,* 207 B.R. 185 (Bankr.E.D.Ark.1997) (no abuse; voluntary dismissal permitted).

■ The bad faith must be demonstrated by "unmistakable manifestations." *LeMaire,* 898 F.2d at 1352 n. 8. These need not be based on proof of malice; rather, the Eighth Circuit "simply require[s] that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse." *Id.*

2. Section 349(a) dismissal with prejudice

■ The sanction of dismissal with prejudice is authorized by 11 U.S.C. § 349(a).[3] A dismissal with prejudice bars further bankruptcy proceedings between the parties and is a complete adjudication of the issues. *Leavitt v. Soto (In re Leavitt),* 171 F.3d 1219, 1223–24 (9th Cir.1999), *aff'g* 209 B.R. 935 (9th Cir. BAP 1997); *Colonial Auto Ctr. v. Tomlin (In re Tomlin),* 105 F.3d 933 (4th Cir.1997) (if bankruptcy order specifies no statutory provision, phrase "with prejudice" may signify a 180–day refiling bar pursuant to 11 U.S.C. § 109(g), or it may signify that debts involved in dismissed case are forever nondischargeable pursuant to 11 U.S.C. § 349(a)); *In re Frieouf,* 938 F.2d 1099 (10th Cir.1991) (section 349(a) conveys on bankruptcy court authority to deny permanently or temporarily the future discharge of debts contained in a dismissed petition;

absolute denial of access to bankruptcy court limited to 180 days via section 109(g)). *But see Casse v. Key Bank Nat'l Assoc.,* 198 F.3d 327, 335 (2nd Cir.1999) (section 109 limitation in *Frieouf* rejected; Second Circuit characterizes it as "distinctly minority view"; absolute bar for more than 180 days may be imposed).[4]

■ Section 349(a) dismissal with prejudice should occur only when the debtor's conduct is particularly egregious and only after full opportunity for a hearing. *Leavitt,* 209 B.R. at 941. A section 349 injunction may issue indefinitely into the future, as the Ninth Circuit held in *Leavitt,* or it may issue only for a time certain. *See, e.g., Stathatos v. United States Trustee (In re Stathatos),* 163 B.R. 83 (N.D.Tex. 1993) (debtor barred for two years); *In re Earl,* 140 B.R. 728 (Bankr.N.D.Ind.1992) (six months); *see generally* Spencer Z. Baretz, *Combatting the Chapter 13 Serial Filer: An Argument for Orders Containing Prospective Relief from the Automatic Stay,* 25 Hofstra L.Rev. 1315 (1997).

3. Section 109(g) six-month absolute bar

■ Additionally, debtors may be barred from any access whatsoever to the bankruptcy system for a period of six months. Section 109(g) of the Code provides, in the part relevant to this case: "[N]o individual ... may be a debtor ... who has been a debtor in a case pending under this title at any time in the preceding 180 days if—the case was dismissed by the court for willful failure of the debtor to

3. Section 349(a) provides:

*Unless the court, for cause, orders otherwise,* the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice a debtor with regard to the filing of a subsequent petition under this title.... (emphasis added).
Section 349 is made applicable to the present proceedings by the general provisions of

11 U.S.C. § 103(a) (chapters 1, 3, and 5 of Code apply to chapters 7, 11, 12, or 13).

4. The Second Circuit found in *Casse* that the Code's various "with prejudice" provisions "complement each other in arming the bankruptcy courts with a variety of weapons for use in controlling serial filers, a species not likely to become endangered in the foreseeable future." *Casse,* 198 F.3d at 341. The court left open the question whether a bankruptcy court could permanently enjoin a serial filer. *Id.* at n. 4.

abide by orders of the court, or to appear before the court in proper prosecution of the case...." 11 U.S.C. § 109(g)(1).

 Legislative history indicates that the purpose of section 109(g) was to provide the bankruptcy courts with greater authority to control abusive multiple filings. S.Rep. No. 65, 98th Cong., 1st Sess. 74 (1983); *see also Tomlin,* 105 F.3d 933, 936 (section 109 provides for sanction that imposes absolute bar only for specified six-month period).

4. Rule 9011 costs and fees.

In relevant part, Rule 9011 of the Federal Rules of Bankruptcy Procedure provides that by signing pleadings filed in court, "[a] party who is not represented by an attorney ... [certifies] ... that [documents are] not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case." Fed.R.Bankr.P. 9011.

 The Eighth Circuit Court of Appeals has affirmed imposition of sanctions on debtors based on a finding of fraudulent transfers and a subsequent finding that debtors continued to "abuse the bankruptcy system to perpetuate their fraud" by filing meritless appeals. *Graven v. Fink (In re Graven),* 196 B.R. 506, 512 (Bankr. W.D.Mo.1996), *aff'd,* 186 F.3d 871 (8th Cir. 1999). A debtor's fraudulently signing false documents and failing to disclose material information, in an attempt to prevent a creditor from recovering assets, violates Rule 9011. *Stuebben v. Gioioso (In re Gioioso),* 979 F.2d 956 (3rd Cir.1992).

 Where a court finds a violation of Rule 9011, the court *must* sanction it. Rule 9011 sanctions are mandatorily imposed on counsel who signed a filing, or the person represented, or both. *Ebersold v. DeLaughter (In re DeLaughter),* 213 B.R. 839, 841 (8th Cir. BAP 1997) (sanctions imposed on debtor's attorney, who

filed amended plan solely to prolong bankruptcy stay, which in turn unnecessarily delayed state court dissolution action); *see also Ward v. Dapper Dan Cleaners & Laundry, Inc.,* 309 Ark. 192, 828 S.W.2d 833 (1992) (debtor entitled to sanctions even if creditor's actions were not improper but merely uninformed). The court's discretion lies not in its conclusion to sanction, but in its determination of which sanction to apply. *Gioioso,* 979 F.2d at 960–61, *quoted in In re KTMA Acquisition Group,* 153 B.R. 238, 247 (Bankr. D.Minn.1993).

 The Rule's central goal is deterrence. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 392, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Sanctions are not intended to make an injured party "whole" for any and all damages sustained by virtue of an abusive claim; rather, the court must focus on what is needed to deter such conduct in the future. *Chris & Todd, Inc. v. Arkansas Dept. of Fin. & Admin.,* 125 F.R.D. 491, 493–94 (E.D.Ark.1989).

**B. Conclusions as to each sanction**

 The Court concludes that Debtor James R. Penny Jr. has filed in "bad faith," with willful and abusive intent. The evidence, taken as a whole, demonstrates that Mr. Penny's primary goal in serial filing was intentionally to misuse the stay in bankruptcy.

 First, his bankruptcy history reveals a pattern of conduct that he undertook specifically to thwart his legitimate creditors. On the eve of numerous sales attempts, Mr. Penny sought bankruptcy protection. Because of the repetitious nature of this conduct, and because of the closeness in time between the attempted sales and his numerous bankruptcy petitions, the Court declines to credit Penny's testimony that he did not know the effect of the section 362 bankruptcy stay.[5]

5. "Although filing for bankruptcy on the eve of foreclosure is not *per se* bad faith ... [a]

penchant for repeatedly doing so can be considered as evidence of bad faith." *In re*

Second, Penny's creditors have received essentially no payments from him during the pendency of at least three of Debtor's five Chapter 13 petitions. During the period in which this Debtor filed bankruptcies Nos. 99–80503, 99–80667, and 99–81076, he made only one payment of $713.00. The Chapter 13 Trustee retained $40.00 for administrative fees and remitted $673.00 to Debtor, on the closing of the 99–81076 case in November 1999.

In the current case No. 99–81365, on the October 29, 1999 petition, the plan calls for payment of $912.00 a month. Mr. Penny paid that amount to the Chapter 13 Trustee on November 19, 1999.[6]

Thus, Debtor has willfully and, largely successfully, kept his creditors at bay for over one year during his three previous bankruptcies, at the cost to himself of only the most recent payments currently in the Chapter 13 Trustee's possession. This is misuse of the bankruptcy system and it must end here.

Third, Debtor fraudulently misrepresented to the Washington County Circuit Court that the corporation Indutec was in bankruptcy, in what appears to have been an attempt to prevent (apparently unsuccessfully) Bank of America's subsequent auction of a piece of Indutec's property. On May 24, 1999, Penny filed with the state court selected pages of his then-current individual Chapter 13 petition, which the Bank contends Penny had physically altered to read that Indutec was in Chapter 11. In the absence of any explanation to the contrary, despite ample opportunity afforded to the Debtor, the Court must conclude that Mr. Penny himself was responsible for this alteration.[7] Mr. Penny has, thus, committed a fraud on both the Washington County Circuit Court and this Bankruptcy Court, by altering official Court documents to misrepresent Indutec's and his bankruptcy status and, thereby, wrongfully to misuse the bankruptcy stay to shield a piece of property from the legitimate actions of a legitimate creditor.

The Court concludes that the above conduct more than demonstrates the "unmistakable manifestations" of "bad faith" abuse that this Court must refuse to condone. *LeMaire*, 898 F.2d at 1352 n. 8. The alteration of a Court document especially demonstrates unfair and, in this case, downright fraudulent, manipulation of the bankruptcy code. *Ladika*, 215 B.R. at 725. Thus, the pending Chapter 13 petition is dismissed with prejudice for bad-faith filing.

The Court finds the "with prejudice" restriction appropriate in this case because the abuse was sufficiently egregious to merit it. The consequence of this determination in the case at bar is that Debtor is enjoined, for a period of two years from the date of this Opinion and Order, from filing any bankruptcy petition based on reorganization, whether that might be in Chapters 11, 12, or 13.[8] 11 U.S.C. § 349(a); *see Stathatos*, 163 B.R. 83.

Additionally, this Debtor is barred from any access whatsoever to the

---

*Casse*, 219 B.R. 657, 660 (Bankr.E.D.N.Y. 1998), aff'd, *Casse v. Key Bank Nat'l Assoc.*, 198 F.3d 327 (2nd Cir.1999).

**6.** The Court's Order to Show Cause, suggesting that Debtor may be liable for criminal sanctions, issued on November 19, 1999. No doubt it was mere coincidence that Penny made his first plan payment on that same date.

**7.** The Court finds not credible the Debtor's mere assertion that he "did not know" that the misrepresentation had been made (December 21, 1999 hearing) or that "of course" he himself did not make the misrepresentation; "why would I do that?" (January 7, 2000 hearing).

**8.** If Debtor files again in Chapter 7 after the 180–day bar, the Court will take judicial notice of this Opinion and Order as a finding of willful and intentional abuse of bankruptcy proceedings. At that time, the Court will consider disallowing the Debtor's discharge of the monetary sanctions provided herein.

bankruptcy system for a period of 180 days, as provided in 11 U.S.C. § 109(g). In the appropriate case, this Court is authorized to impose injunctions pursuant to both section 349(a) and section 109(g). *Leavitt,* 209 B.R. at 941. This is an appropriate case to impose both sanctions and the Court shall do so.

█ Finally, creditors affected by Debtor's abuses are entitled to Rule 9011 sanctions. In this Court's seventeen-year career on the bench, the Court has never seen such flagrant and fraudulently flavored serial filing as in the present case. Accordingly, further sanctions are mandated to deter such conduct. *Chris & Todd,* 125 F.R.D. at 493–94.

Attorneys for secured creditors Bank of Fayetteville (BOF) and Bank of America (BOA)[9] have submitted affidavits of attorney's fees and expenses incurred in preparation, legal research, and court appearances made during the course of Debtor's five bankruptcies, in connection with motions for relief from stay, motions to dismiss, and motions for sanctions. The Court will issue separate judgments in these creditors' favor, in the amounts and for the reasons as set forth as follows.

The Court has reviewed Bank of Fayetteville counsel's amended affidavit and has found reasonable charges in the amount of eight hours at $75.00 an hour, for a total of $600.00 in fees. The costs caused by five bankruptcies are reasonable in the amount of $377.22.

The total fees and costs due BOF are $977.22.

The Court has reviewed Bank of America (BOA) counsel's affidavit. The $150.00 fees in paragraph two, for entry of appearance and objections in case No. 98–81045, were not for that reason.

The fees in BOA paragraph four, with respect to case No. 99–80667, are reasonable in the amount of 8.6 hours at $80.00 an hour, and 2.3 law-clerk hours at $40.00 are also reasonable; 1.5 paralegal hours at $60.00 an hour are not reasonable. Thus, fees in the amount of $780.00 are reasonable for this case.

The fees in paragraph five, with respect to case No. 99–81076 at a rate of $100.00 an hour, are reduced to include the following: One hour spent on a Motion to Dismiss,[10] two hours spent on a Motion for Sanctions, and five hours legal research on sanctions, for an amount totalling $800.00.

The fees at $100.00 an hour in paragraph six, with respect to appearances made in case No. 99–81365, the Court will allow as follows: Six hours' travel time from Little Rock to Fayetteville and back; two hours for a second appearance in Little Rock via video conferencing; two hours for a third appearance also by video, and an additional two hours to prepare another Motion to Dismiss and for Sanctions, for a total of $1,200.00.

The costs in paragraph seven, caused by five bankruptcies, are reasonable in the amount of $274.50.

The total fees and costs due BOA are $3,054.50.

The plan payments currently in the Trustee's possession shall be distributed pro rata and applied towards satisfaction of the above-detailed awards, after deducting any sums owing to the Chapter 13 Trustee. This case shall remain open only

---

9. Counsel for Creditor Homeside Lending, Inc., failed to meet the Court's deadline of Wednesday, January 11, 2000 due to family illness. She may have an additional thirty days from the date of this Opinion to file her affidavit of expenses limited to those incurred in connection with motions for relief, to dismiss, and for sanctions. On review of that application for reasonableness of fees and costs, the Court will issue a judgment in her client's favor.

10. The Court has already allowed 2.3 hours in researching a prior Motion to Dismiss filed in case No. 99–80667.

for the limited purpose of distribution in accordance with this Opinion.

IT IS SO ORDERED.