**In re SOUTH PARK CARE ASSOCIATES, INC., d/b/a South Park Care Center, a Missouri Corporation, Debtor.**

Bankruptcy No. 94–42992.

United States Bankruptcy Court, W.D. Missouri.

Oct. 18, 1996.

Judith M. Strong, U.S. Attorneys Office, U.S. Department of Justice, Kansas City, MO, for Creditor.

David M. Byrn, Jeter, Rains and Byrn, Blue Springs, MO, for Debtor.

*Memorandum Opinion*

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Creditor Health Care Financing Administration ("HCFA") moved this Court to approve setoff of a prepetition overpayment by HCFA against a prepetition underpayment which resulted from the granting by HCFA of debtor's request for a cost limit exception. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find that HCFA's right of setoff survived the confirmation and modification of debtor South Park Care Associates, Inc., d/b/a South Park Care Center's ("South Park") Plan of Reorganization.

Debtor filed a Chapter 11 bankruptcy petition on November 8, 1994. The First Amended Plan of Reorganization (the "Plan") was confirmed by this Court on September 15, 1995. On September 28, 1995, Trispan, the fiscal intermediary with whom HCFA contracts to direct and manage the daily administration of Medicare funds in Missouri, notified debtor that its yearly audit for the fiscal year ending December 31, 1993, revealed that HCFA had overpaid debtor by the sum of $36,005.00. HCFA had not previously been listed as a creditor in this bankruptcy case. Debtor then moved to modify the confirmed Plan to include HCFA's claim as a Class 12 Unsecured Claim. This Court confirmed debtor's Third Modification to Confirmed Plan (the "Third Modification") on November 5, 1995. It is undisputed that HCFA's acceptance of its treatment under the Third Modification waived any right HCFA might have had to recoup its prepetition claim against postpetition remittances it was obligated to pay to debtor. Recoupment, however, is not the issue in this case.

On February 1, 1996, debtor, through Trispan, requested a cost limit exception for the cost reporting period which ended on December 31, 1993. Said request was referred to HCFA's Office of Payment Policy in Baltimore, Maryland. On June 3, 1996, HCFA notified Trispan that it was granting its cost limit exception. As a result of this grant, HCFA owes debtor an additional sum of $81,666.00 for the 1993 fiscal year.

HCFA's audit for fiscal year 1994, completed after this Court confirmed the Third Modification, also reveals an overpayment of $11,873.00. Of that sum, $10,149.00 is attributable to overpayments prior to November 8, 1994, debtor's petition date. Asserting a common law right of setoff, HCFA retained $46,154.00 of the $81,666.00 cost limit exception it owes debtor, and moved this Court to approve same. The amount retained by HCFA represents its overpayment to debtor for both fiscal year 1993 and the portion of

fiscal year 1994 prior to the filing of debtor's bankruptcy petition.

 Thus, HCFA simply seeks to set off its prepetition obligation to the debtor against the debtor's prepetition obligation to it. If not allowed to do so, HCFA would be required to pay the $81,666.00 it owes debtor immediately, and be paid the $46,154.00 owed to it by debtor pursuant to the terms of the Plan. As will be shown, a creditor such as HCFA is typically allowed to set off obligations such as these. However, debtor basically makes two arguments in its Objection to Motion to Approve Post–Confirmation Setoff. Doc. # 344. Debtor claims that HCFA's acceptance of its treatment under the Third Modification waived any right it had to set off its prepetition claim against the cost limit exception payment. Debtor also claims that the confirmation of a Chapter 11 Plan destroyed any rights to setoff not specifically preserved in the Plan.[1] I will first deal with the issue of whether confirmation of a plan destroys any existing right of setoff not preserved in the Plan.

 The Bankruptcy Code (the "Code") preserves whatever setoff rights a party has outside of bankruptcy.[2] Section 1141, on the other hand, states that confirmation of the Plan discharges any prepetition debts, and any assets retained by the debtor are free and clear of any prepetition debts.[3] 11 U.S.C. § 1141. Some courts have noted that sections 553 and 1141 are in conflict with each other. *In re Holder,* 182 B.R. 770, 773 (Bankr.M.D.Tenn.1995) citing *Carolco Television Inc. v. National Broadcasting Co. (In re De Laurentiis Entertainment Group, Inc.,* 963 F.2d 1269 (9th Cir.), *cert. denied* 506 U.S. 918, 113 S.Ct. 330, 121 L.Ed.2d 249 (1992)). The plain language of section 553, however, provides that "[e]xcept as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt." 11 U.S.C. § 553(a). The plain language of the

---

1. Debtor also makes a half-hearted argument that HCFA failed to file a timely proof of claim as to the 1994 overpayment. I note that HCFA never filed a proof of claim as to either the 1993 or the 1994 overpayment because HCFA was never listed as a creditor on debtor's bankruptcy schedules. Furthermore, debtor modified its Plan based upon the 1993 overpayment without benefit of a proof of claim. I also note that the failure to assert a right of setoff in a proof of claim, if filed, will not waive a right to setoff. *Weems v. United States (In re Custom Center, Inc.),* 163 B.R. 309, 317 (E.D.Tenn.1994).

2. (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

 (1) the claim of such creditor against the debtor is disallowed;
 (2) such claim was transferred, by an entity other than the debtor, to such creditor—
 (A) after the commencement of the case; or
 (B)(i) after 90 days before the date of the filing of the petition;
 (ii) while the debtor was insolvent; or
 (3) the debt owed to the debtor by such creditor was incurred by such creditor—
 (A) after 90 days before the date of the filing of the petition;
 (B) while the debtor was insolvent; and
 (C) for the purpose of obtaining a right of setoff against the debtor.
 11 U.S.C. § 553(a).

3. Section 1141 of the Code provides:

 (a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.
 (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
 (c) Except as provided in subsection (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.
 (d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
 (A) discharges the debtor from any debt that arose before the date of such confirmation....
 11 U.S.C. § 1141.

Code in section 553, therefore, states that the right to offset a mutual debt is tempered only by the automatic stay of section 362, and the use, sale or lease of property as controlled by section 363. *Holder*, 182 B.R. at 775. Setoff is not in any way affected by the confirmation process. *Id.* Thus, the issue becomes whether HCFA possesses the right to offset a mutual debt.

The right to setoff is an equitable remedy which arises only when the intent to set off is asserted. *In re Medina*, 177 B.R. 335, 350 (Bankr.D.Or.1994). In order to establish that a valid right to setoff exists, HCFA must show the following: (1) a prepetition debt owed by HCFA to South Park; (2) a prepetition claim of HCFA against South Park; (3) that the claim and the debt are mutual obligations; and (4) that HCFA would have a right to setoff the debts under nonbankruptcy law. *Holder*, 182 B.R. at 775. The parties do not dispute the fact that HCFA owes South Park a debt which arose prior to the bankruptcy filing. Nor does either party dispute that HCFA has a claim against South Park for overpayment. The obligations are mutual and the right to setoff exists under nonbankruptcy law. *See Buchweiser v. Estate of Laberer*, 695 S.W.2d 125, 129 (Mo.1985) (en banc); *Edmonds v. Stratton*, 457 S.W.2d 228, 232 (Mo.Ct.App. 1970). HCFA has, therefore, demonstrated that all of the elements of a valid right of setoff exist, notwithstanding confirmation of the Plan and the Third Modification. This Court must now decide if HCFA waived its right to assert setoff.

Debtor argues that HCFA waived its right to setoff by not preserving its right in the Third Modification, and by not filing a timely proof of claim for the 1994 overpayment. In general, "[w]aiver is the intentional relinquishment of a known right." *In re Jamesway Corp*, 201 B.R. 73, 76–77 (Bankr. S.D.N.Y.1996) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)); *Marino v. Chrysler Credit Corp.*, 201 B.R. 234, 244–45 (Bankr.N.D.Ill. 1996) (holding that "waiver is an intentional abandonment or relinquishment of a known right or advantage which, but for such waiver, the party would have enjoyed") (citations

omitted). Additionally, there are general rules of waiver applicable to setoff. *McCarty v. Nat'l Bank of Alaska (In re United Marine Shipbuilding)*, 198 B.R. 970, 978 (Bankr. W.D.Wash.1996). A creditor waives its right of setoff unless it takes affirmative action to effectuate setoff, and a creditor waives its right of setoff by "conduct that is inconsistent with exercising the right of setoff." *Id.; In re Medina*, 177 B.R. 335, 350 (Bankr. D.Or.1994); *Weems v. United States (In re Custom Center, Inc.)*, 163 B.R. 309, 316 (E.D.Tenn.1994). Applying these principals to the case at hand clearly demonstrates that HCFA did not waive its right to setoff. First, the right was unknown to HCFA at the time of the Third Modification. Debtor did not request the cost limit exception until three months after this Court confirmed the Third Modification. Until that time, HCFA was aware only of its claim against debtor, not any debt it owed to debtor. Debtor applied to HCFA for a cost limit exception on February 1, 1996. The decision to grant the cost limit exception was granted on June 3, 1996. HCFA could not have knowingly or intentionally waived an unknown right.

HCFA asserted its right to setoff by its Motion to Approve Post–Confirmation Setoff on August 16, 1996, after becoming aware of the debt on June 3, 1996. HCFA testified that Trispan makes interim payments to health care providers in Missouri. At the close of a defined fiscal period known as a "cost year," Trispan audits the payments and corrects any overpayments or underpayments. As a rule, HCFA testified, it requires eighteen months to conduct said audit and determine whether there have been overpayments or underpayments which need adjustment. I mention this only to note that HCFA granted debtor its cost limit exception with much more dispatch then it conducts the audits to determine overpayments. I also find that by asserting its right to setoff within seventy-four days of becoming aware of said right, HCFA did not waive its right.

Most cases that find a creditor waived its right to setoff do so because the creditor released the funds in its possession to the debtor and is attempting to get them back. By such actions, the courts find that a credi-

tor's conduct is inconsistent with its claim. *See, e.g., In re Medina,* 177 B.R. 335, 351 (Bankr.D.Or.1994); *In re Wilson,* 49 B.R. 19, 21 (Bankr.N.D.Tex.1985). In this case, HCFA's conduct is consistent with its asserted right. HCFA has not released funds to debtor in the amount of its prepetition claim.

Finally, debtor argues that the application of setoff is not mandatory, but, instead, lies within the equitable discretion of the court. *See, e.g., In re United Marine Shipbuilding, Inc.,* 198 B.R. 970, 978 (Bankr. W.D.Wash.1996); *In re Holder,* 182 B.R. 770, 776 (Bankr.M.D.Tenn.1995). I agree that the right of setoff is a purely equitable remedy, however, it is a remedy that is favored in the law. *Marine Shipbuilding* at 978; *See also Winter v. Glaze (In re Glaze),* 169 B.R. 956, 964 (Bankr.D.Ariz.1994). HCFA has a valid right to set off its claim against the funds it owes to debtor. Even if the Court has the discretion to prohibit an otherwise valid setoff, the debtor has not offered any justifiable reason to deny HCFA the remedy available to it.

For all of the above reasons, HCFA's Motion to Approve Post–Confirmation setoff is SUSTAINED.

An Order in accordance with this Memorandum Opinion will be entered this date.