# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 00-6107ND

---

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Bruce Krause and | * | |
| Mary Jane Krause, | * | |
| | * | |
| Debtors, | * | |
| | * | Appeal from the United States |
| United States of America, | * | Bankruptcy Court for the |
| | * | District of North Dakota |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Bruce  Krause and | * | |
| Mary Jane Krause, | * | |
| | * | |
| Appellees. | * | |

---

Submitted: March 27, 2001
Filed: April 19, 2001

---

Before KRESSEL, SCHERMER and VENTERS,[1] Bankruptcy Judges

SCHERMER, Bankruptcy Judge

---

[1]  Jerry W. Venters, United States Bankruptcy Judge for the Western District of Missouri, sitting by designation.

The United States of America (the "Government"), appeals the bankruptcy court order confirming Bruce and Mary Krause's (the "Debtors") amended chapter 12 plan (the "Amended Plan"). The Amended Plan allows the Debtors to use payments received under the Conservation Reserve Program ("CRP") contract to pay part of a mortgage debt ("Mortgage Debt") owed to the Farm Service Agency ("FSA") and bars the Government from offsetting funds from the CRP against the Mortgage Debt. We have jurisdiction over this appeal from the final orders of the bankruptcy court. See 28 U.S.C. § 158(b). For the reasons set forth below, we reverse and remand to the bankruptcy court for further proceedings consistent with this opinion.

ISSUE

The issues on appeal are intertwined. They are: (1) whether the Amended Plan as proposed by the Debtors meets the chapter 12 cramdown requirements; and (2) whether the Amended Plan meets the feasibility requirement of chapter 12. We conclude that the Debtors failed to meet the cramdown and feasibility requirements necessary for confirmation of the Amended Plan.

BACKGROUND

The Debtors own a parcel of property (the "Property"). It is located in Richland County, North Dakota. Although there are a house and other buildings on the Property, the Debtors live in rental property in Lidgewood, North Dakota.

The Debtors owe the first mortgage holder, Norwest Bank, approximately $34,632.00. FSA holds a second mortgage on the Property. The land was appraised at $152,000.00. At the date of filing, the Debtors owed FSA $198,115.50. The Mortgage Debt gives FSA a secured claim on the Property of $117, 368.00 ($152,000.00 less $34,632.00).

Approximately one year prior to filing for bankruptcy relief, the Debtors began the CRP contract term. The contract period began October 1, 1998, and ends September 30, 2008. At filing, nine years remained on the CRP contract. The CRP contract entitles the Debtors to receive payments of approximately $9,622.00 for each year of the contract as long as they comply with the contract terms. The first CRP payment was made to the Debtors pre-petition. The Debtors anticipate that post-petition they will receive CRP payments for the nine remaining years totaling $86,598.00.

The Debtors do not work on the farm and have no plans to farm the Property in the future. The only income they generate from the farm is the CRP payments. Mr. Krause works as a car salesman on salary plus commission. He earns a net amount of $600.00 monthly from his job and receives social security benefits of $621.00 each month. Mrs. Krause earns approximately $500.00 per month through her job at a convenience store and receives a social security payment of approximately $322.00 monthly. The Debtors therefore generate an annual income of approximately $34,138.00, consisting of about $24,516.00 in non-farm income and $9,622.00 in CRP payments.

Family living expenses and farm expenses for the Debtors amount to approximately $20,000.00 per year. Mr. Krause also testified that the Debtors are liable for state and federal income taxes totaling $22,000.00 from the sale of farm equipment and machinery, although the Amended Plan did not contain provisions for their payment. Thus, from their annual income of about $34,138.00, the Debtors have approximately $13,475.00 available for debt service.

On November 10, 1999, the Debtors filed a joint petition for Chapter 12 bankruptcy relief. FSA filed a proof of claim in the Debtors' bankruptcy case for $198,115.50. The proof of claim does not assert a right of setoff and does not include the CRP funds as property available for setoff. The Government, acting on behalf of FSA, filed objections to the Debtors' Chapter 12 plan.

The Debtors then filed the Amended Plan. The annual payments under the Amended Plan remain $13,475.00 per year. The Amended Plan allows Norwest Bank to retain its mortgage lien on the farm. The Debtors also propose to make payments owed to Ford Motor Company ("Ford") on its secured claim. Neither Ford nor Norwest objected to the Amended Plan.

The Amended Plan calls for $9,185.00 of the $9,622.00 in annual CRP payments to be paid to the Government on its Mortgage Debt through direct assignment and applied to the reduction of the portion of the Mortgage Debt that is secured by the Government's second mortgage on the farm. The remaining $437.00 will be retained by the Debtors for living expenses. The Government claims that the full $9,622.80 secures its $198,115.50 claim. The Amended Plan does not recognize a right to setoff on behalf of the Government and does not treat the Government's setoff claim as secured. The bankruptcy court stated that the assignment under the plan was "for all practical purposes the equivalent of setoff."

Although the Amended Plan addressed some objections that the Government had to the first plan, FSA objected to its confirmation. After the bankruptcy court entered an order confirming the Amended Plan, the Government filed a Motion for Reconsideration of the Order Confirming the Debtors' Amended Chapter 12 Plan. At the same time, the Debtors filed a motion for the bankruptcy court to correct a clerical error in the order confirming the Amended Plan. The bankruptcy court granted the Debtors' motion to correct the clerical error and denied the Government's motion for reconsideration.

The Government filed a notice of appeal from the bankruptcy court orders confirming the Amended Plan and denying the Government's motion for reconsideration. The bankruptcy court granted the Government's request for a stay pending the appeal and enforcement of the Amended Plan was suspended until ten days after termination of the stay.

## STANDARD OF REVIEW

The facts are not in dispute. This Court reviews de novo the bankruptcy court's legal conclusions, and reviews for clear error its findings of fact. Fed. R. Bankr. P. 8013. Gateway Pac. Corp. v. Expeditors Int'l of Washington, Inc., 153 F.3d 915, 917 (8th Cir. 1998); Martin v. Cox (In re Martin), 140 F.3d 806, 807 (8th Cir. 1998); Gourley v. Usery (In re Usery), 123 F.3d 1089, 1093 (8th Cir. 1997). Confirmation of a Chapter 12 plan is a legal question to be reviewed by this Court de novo.

## DISCUSSION

According to the Government, the bankruptcy court misconstrued the effect of the Debtors' use of the $9,622.00. The Government argues that its right to offset the CRP payment to the Debtors against its $198,115.50 claim was not included in the computation of its secured claim. It further argued that the effect of the Amended Plan is to permit the Debtors to use the Government's secured property, the $9,622.00 in annual CRP payments, to pay the portion of the Mortgage Debt secured by the farm. In addition, the Government argues that the Debtors' retention of the $437.00 is an unlawful denial of the Government's right of setoff.

The Debtors' proposed Amended Plan would deny the Government any right to offset annual CRP payments against the Mortgage Debt for "compelling equitable reasons." The Debtors claim that they are entitled to the annual CRP payments from the Government and in the Amended Plan, propose to use the

CRP payments to pay part of the Mortgage Debt. The Debtors argue that the Government waived any right to setoff.

Plan Confirmation Pursuant to 11 U.S.C. § 1225(a)(5)

A chapter 12 debtor has the burden of proving that his bankruptcy plan meets all confirmation requirements. See In re Sauer, 223 B.R. 715, 726 (Bankr. D. N.D. 1998); In re Alvastad, 223 B.R. 733, 737, n.3 (Bankr. D. N.D. 1998). Section 1225(a)(5) of the Bankruptcy Code (the "Code") explains the Chapter 12 cramdown requirements. In a case where the holder of an allowed secured claim does not accept a Chapter 12 plan proposed by the debtor and the debtor fails to surrender the collateral to the creditor, the plan must provide the secured creditor two benefits. 11 U.S.C. § 1225(a)(5)(A) & (C). First, the creditor must retain its lien on the collateral. 11 U.S.C. § 125(a)(5)(B)(i). Next, the secured creditor is entitled to the present value of its secured claim as is stated in section 1225(a)(5)(B)(ii) of the Code:

> the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim must not be less than the allowed amount of such claim.

11 U.S.C. § 1225(a)(5)(B).

The Amended Plan is not confirmable pursuant to section 1225(a)(5)(B)(ii) because the Government's secured claim is much larger than that provided for in the Amended Plan. The Debtors should have drafted the Amended Plan to reflect the Government's secured claim totaling $203,966.00, $117,368.00 secured by the Property and $86,598.00 in secured setoff rights from nine years of CRP payments. Instead, the Amended Plan failed to include an $86,598.00 component for setoff rights on behalf of the Government.

*Secured Setoff Rights*

The Code does not create a federal right of setoff. See Citizens Bank of Md. v. Strumpf, 516 U.S. 16, 18, 116 S.Ct. 286, 289 (1995); Sauer, 223 B.R. at 724; Alvastad, 223 B.R. at 741. Section 553(a) of the Code states that "this title does not affect any right of a creditor to offset a mutual debt owing by such

creditor to the debtor." 11 U.S.C. § 553(a). To establish a right of setoff, the Government must prove four elements:

1. A debt exists from the Government to the Debtors and that debt arose prior to the commencement of the bankruptcy case;

2. The Government has a claim against the Debtors which arose prior to the commencement of the bankruptcy case;

3. The debt and the claim are mutual obligations; and

4. That the Government would have the right to offset the debt under non-bankruptcy law.

See In re Pace, 257 B.R. 918, 919 (Bankr. W.D. Mo. 2000).

The Debtors concede that all elements of setoff exist and are satisfied by the Government. The amount subject to setoff is a secured claim. See 11 U.S.C. § 506(a) ("an allowed claim of a creditor. . . that is subject to setoff under section 553 of this title, is a secured claim . . . to the extent of the amount subject to setoff."); In re Cookis, 157 B.R. 385, 388 (Bankr. S.D. Ohio 1993).

*Waiver of Secured Setoff Rights*

According to the Debtors, the Government waived its setoff rights because its conduct was inconsistent with its subsequent setoff claim. The Debtors note that the Government's proof of claim made no mention of setoff rights and that, pre-petition, the Government voluntarily made a CRP payment to the Debtors. The Debtors' waiver of claim argument lacks merit. The bankruptcy court acknowledged that a creditor waives his setoff rights by conducting himself in a way that is inconsistent with setoff. Further, the bankruptcy court specified that when determining whether creditors ultimately waived their setoff rights, courts do not focus on isolated events, but rather, on whether creditors continually waive their setoff rights throughout the administration of their cases. The bankruptcy court made a finding of fact that the Lender did not waive his setoff rights because the Lender raised setoff in his objections to both the first plan and the Amended Plan and filed an amended proof of claim reflecting his setoff rights. The bankruptcy court's finding that the Government did not waive its secured setoff rights was not clearly erroneous.

*Modifications or Denial of Secured Setoff Rights*

We hold that the Government has the secured right to setoff and can exercise its setoff right when the automatic stay is lifted. See 11 U.S.C. § 362 (a)(7). The bankruptcy court cited numerous cases suggesting that courts have the discretion to prohibit or restrict the setoff right in the presence of "compelling circumstances." It found that a compelling equitable exception to the right of setoff was interference with the Debtors' ability to reorganize.

The Government's setoff rights cannot be modified or denied due to "compelling circumstances." The Code merely confirms a right of setoff in bankruptcy proceedings where it exists under non-bankruptcy law. It is silent regarding equitable considerations for modifying or denying setoff. See Sauer, 223 B.R. at 726 (emphasizing that setoff is a right and stating that equitable considerations do not absolve that right once it is established). The only exceptions to the rule that a creditor's right to setoff remains unaffected in bankruptcy are those found in section 553.[2] Id. at 725.

When denying setoff, the bankruptcy court reasoned that assignment of ninety-five per cent of the CRP payments to the Government under the Amended Plan amounted to the same thing as setoff.[3] We disagree. Assignment and setoff are not synonymous. The Government's setoff rights are unique because they are treated as secured debt. In addition, setoff places the Government in a position of control that assignment does not.

---

[2] The bankruptcy court cited case law to support its conclusion that setoff rights can be altered for equitable reasons in the presence of "compelling circumstances." Any case law allowing such modification or denial of setoff rights holds no weight against a clear absence in the Code of the right to modify or deny setoff rights in the Code. See New Jersey Nat'l Bank v. Gutterman (In re Applied Logic Corp.), 576 F.2d 952, 957-58 (2nd Cir. 1978)(footnote omitted) (citing Studley v. Boylston Nat'l Bank, 229 U.S. 523 (1913)).

[3] The Debtors argued that under the Amended Plan, they only retain $437.00 of the $9,622.00, approximately five percent of the annual CRP payment. Under the Amended Plan, the Debtors would not use only five percent of the CRP payment. Rather, the Debtors would use $9,185.00 of the CRP payment to apply against the Mortgage Debt and $437.00 for their living expenses.

Because the Debtors fail to recognize and provide for payment of the Government's secured setoff claim in the Amended Plan, the Amended Plan should not have been confirmed.

Plan Confirmation Pursuant to 11 U.S.C. § 1225(a)(6)

Section 1225(a)(6) of the Code, the feasibility provision, states that a court should confirm a plan if "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1225(a)(6). Reasonable assurances that the plan can be completed and that the plan will cash flow are required of the debtor. Sauer, 223 B.R. at 726. Whether the Debtors can propose another plan that would meet the feasibility provisions of the Code is perhaps dubious, but we believe the Debtors should nevertheless be given that opportunity.

CONCLUSION

The Amended Plan as proposed by the Debtors is not confirmable because it does not recognize and provide for payment of the Government's entire secured claim as required pursuant to section 1225(a)(5)(B)(ii) of the Code. In addition, the Amended Plan is not feasible because the Debtors can not use the CRP payments for funding. For the foregoing reasons, the judgment of the bankruptcy court is reversed. This case is remanded to the bankruptcy court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE
EIGHTH CIRCUIT

-8-