**Vincent William MICHELS, Debtor.**

**No. 01–01415–W.**

United States Bankruptcy Court, N.D. Iowa.

Dec. 18, 2001.

738

Thomas L. Fiegen, Cedar Rapids, IA, for Debtor.

John Hofmeyer, III, Oelwein, IA, for Maynard Savings Bank.

Larry Kudej, Asst. U.S. Atty., Cedar Rapids, IA, for IRS.

Carol F. Dunbar, Waterloo, IA, Chapter 13 Trustee.

## ORDER RE FINAL CONFIRMATION HEARING

PAUL J. KILBURG, Chief Judge.

The final confirmation hearing on Debtor's Chapter 13 plan in the above captioned matter came before the Court on October 31, 2001. Debtor Vincent Michels appeared with attorney Thomas Fiegen. John Hofmeyer III appeared for Maynard Savings Bank. Carol Dunbar appeared as Chapter 13 Trustee. Assistant U.S. Attorney Larry Kudej represented the IRS. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has now passed. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## FINDINGS OF FACT

Debtor filed his Chapter 13 petition on April 23, 2001. In his Second Amended Chapter 13 Plan (with technical amendments) filed October 31, 2001, Debtor proposes a 48–month plan which will pay 100% of his unsecured claims. Debtor owns a 200 acre farm as well as a building in town in which a bar is located. He proposes to fund his plan through these income sources as well as off-farm income. The plan is funded, in part, by proceeds from proposed future sales of Debtor's farm machinery and his business, Shooky's Bar & Grill (the "Bar"). Debtor testified

he is able to fund his plan from farming proceeds through the 2002 harvest, his off-farm employment, lease payments from the Bar and from his 200–acre farm after 2002, and excess sales proceeds after payment of the Bank's secured claim. Debtor's largest creditor is Maynard Savings Bank. The Bank has a first lien on the farm machinery and the bar property. It has a second mortgage on the farm.

Debtor explained that during a four-year plan, he will market the Bar to attain the best possible purchase price. The current tenants of the Bar have a lease/purchase agreement. The agreements allows them to purchase the Bar for $140,000 with a first right of refusal if Debtor receives a higher offer. Debtor intends to solicit other buyers and hopes to receive $160,000 from the sale of the Bar.

Debtor testified he plans to maintain and repair the farm equipment for sale during the most appropriate time of year. After his corn harvest this year, he will market the corn equipment for sale. After the bean harvest in 2002, Debtor will prepare the bean equipment for sale. He intends to pay the Bank $100,000 from the sale of the Bar and ½ of the proceeds from the sale of the machinery, as well as monthly payments during the Chapter 13 plan. Debtor indicates that the Bank's oversecured claim will be paid in full by the end of the plan, with interest. He values his 200 acre farm at $375,000, with a first mortgage of approximately $90,000. It is uncontested that the Bank is oversecured.

Objections to confirmation were filed by Maynard Savings Bank, the IRS and the Chapter 13 Trustee. All three parties question the feasibility of Debtor's plan. The IRS points out that tax returns show Debtor had farming losses in four out of the last five years. Debtor explained he had been holding and storing his grain in prior years but this year has entered into cash forward contracts. Trustee questions discrepancies between the cash flow analysis attached to the plan and expenses listed on Schedule J. Trustee reports that Debtor is current in his plan payments through October. The Bank reported that it has not received any payments from Debtor since December 1999. The plan calls for $1000 monthly payments to the Bank starting October 10, 2001, increasing to $1200 per month starting January 10, 2002.

The Bank objects to the interest rate to be paid on its secured claim and to the plan's failure to provide that the Bank retains its liens. It asserts it should receive the contract rate or a current market rate of interest, or approximately 9 to 10 percent. Debtor states that legal precedent in this district requires interest at 2 percent above the current federal bond rate, or approximately 5.25%. The plan proposes an interest rate of 7 percent.

At the hearing, the Court noted that the file does not contain a proof of claim for the Bank. The Court requested the parties brief the issue of the effect on the Bank's secured claim in light of the Bank's failure to file a proof of claim. The deadline for filing proofs of claims was August 29, 2001. On November 5, 2001, after the confirmation hearing, the Bank filed an untimely proof of claim asserting a secured claim of $201,785.07, plus 9.75% interest after 10/30/01, plus attorney fees.

### TREATMENT OF OVERSECURED CLAIM

The primary objection asserted by the Bank relates to impairment of it's secured claim. Section 1322(b)(2) permits modification of secured claims, other than those solely secured by the debtor's residence, by altering interest rates, monthly payments, length of repayment period, etc.

Section 1325(a)(5)(B) requires the secured creditor retain its lien and the debtor must pay the value of the creditor's collateral with interest during the life of the plan. *See* 2 Keith Lundin, *Chapter 13 Bankruptcy* § 104.1 (3d ed.2000). The Eighth Circuit has stated § 1325(a)(5)(B) requires oversecured creditors receive a "market rate" of interest through a Chapter 13 plan. *In re Roso*, 76 F.3d 179, 180 (8th Cir.1996).

■ The Bank has a mortgage on and security interest in the Bar and a lien on Debtor's farm machinery. This is the type of secured claim that may be modified under § 1322(b)(2) as it is not solely secured by Debtor's principle residence. Modification of the interest rate is permitted over the Bank's objection but the reduced interest rate must protect the value of the Bank's collateral.

Paragraph 2(d) of the Plan proposes the Bank will be paid one-half of the proceeds if the Bar is sold, in exchange for the Bank releasing its related lien. Further, the Bank's monthly payments will be reduced to one-half, "representing the remaining secured claim against the farmland and machinery and equipment." If the plan provisions are sufficient to provide the Bank with the value of its claim and to protect its rights in the collateral during the term of the plan, the Code allows the plan to modify the Bank's allowed secured claim. The record in this case establishes that this objection, standing alone, is insufficient to deny confirmation.

## FEASIBILITY

■ A primary requirement for confirmation of a Chapter 13 plan is feasibility, or that "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). The debtor has the burden to prove that the plan is feasible. *In re Wagner*, 259 B.R. 694, 700 (8th Cir. BAP 2001). A definite declaration as to the source and amount of funds necessary to enable the debtor to make plan payments is required. *Id.* Reasonable assurances that the plan can be completed and that the plan will cash flow are required of the debtor. *In re Krause*, 261 B.R. 218, 224 (8th Cir. BAP 2001) (considering Chapter 12 feasibility).

■ The objections of the Bank, the IRS and Trustee regarding feasibility of Debtor's plan are well taken. Debtor testified that he could pay all payments required under the plan. The cash flow analysis attached to the plan, however, does not support his testimony. The plan proposes multiple payment mechanisms. The base plan calls for monthly payments of $550. In addition, Debtor proposes periodic lump sum payments as the machinery and bar business are liquidated. The plan finally proposes a balloon payment at the end of the plan for any remaining amounts due. However, the amended Schedules I and J reflect that there is only $342.30 available per month for the base plan. In addition, Debtor's cash flow statement reflects potential income for 2001 as $58,116.28 and expenses of $58,003.07. Obviously, this statement reflects inadequate money to fund the plan. Plan payments to the Bank and Trustee are not reflected in Debtor's listed expenses. Schedule J expenses are not specified in the analysis. The Court is unable to determine whether the cash flow analysis takes into account certain expenses such as insurance on the Bar.

## LATE FILED PROOF OF CLAIM

In its brief, the Bank asserts, among other things, that its claim should be considered an allowed secured claim even though tardily filed because there is no reason for any party to object to the allowance of the claim. Debtor's brief asserts

that, despite the Bank's failure to file a proof of claim, it has vigorously participated in the case and thus consented to jurisdiction and modification of its prepetition contract and lien rights. Debtor does not address the effect of the Bank's late-filed claim. Trustee recommends that, to the extent the Bank is somehow determined to be undersecured, it should not receive any unsecured dividend because its proof of claim was filed after the bar date. The IRS states in its brief that it takes no position concerning the Bank's failure to timely file a proof of claim.

■ Section 1325(a)(5) sets out the requirements for treatment of allowed secured claims in Chapter 13 plans. In order to be an "allowed" secured claim, a proof of claim must be filed under § 501. 11 U.S.C. § 502(a). If an objection is filed, a secured claim is not an allowed claim if a proof of claim was not timely filed. 11 U.S.C. § 502(b)(9). The deadline for filing a proof of claim is 90 days after the first date set for the creditors' meeting. Fed. R. Bankr.P. 3002(c).

■ If an untimely secured claim is disallowed, the creditor would receive no distribution under the plan, the claim would be discharged at the end of the plan, the creditor may be precluded from seeking relief from the stay during the term of the plan, and the creditor's lien may be at risk under § 506(d). *See,* 4 Keith Lundin, *Chapter 13 Bankruptcy* § 290.1 at 290–3, – 4 (3d ed.2000). The conditions for voiding a secured creditor's lien under § 506(d) are present when an untimely proof of a secured claim is filed and a party successfully objects to that claim. *Id.* § 286.1, at 286–6. One case has noted that a trustee is entitled, and may be obligated, to object to a tardily-filed secured claim. *In re Macias,* 195 B.R. 659, 662 n. 5, 663 (Bankr. W.D.Tex.1996).

■ In this case, the claims filing deadline was August 29, 2001. The Bank tardily-filed its proof of claim asserting its secured claim on November 5, 2001. Either Trustee or Debtor may have incentive to object to the Bank's claim as untimely. Neither party has filed an objection to the claim at this time. Under the existing record, if no objection is filed to the untimely filed claim of Maynard Savings Bank, the claim will be allowed. However, if an objection is filed, the untimely filed claim is automatically disallowed.

## CONCLUSIONS

The record presented to the Court in this case is unusual and unique. At the time of confirmation hearing on October 31, 2001, this Court has concluded that Debtor presented a plan which was not feasible if all claims addressed in the plan were paid. As previously set forth in this opinion, the financial figures presented by Debtor fail to show adequate monthly income to pay all claims. However, the largest secured creditor, Maynard Savings Bank, had not filed a claim. Debtor's plan states that the "allowed secured claim of the Maynard Savings Bank" would be paid $1,000 per month until December 10, 2001, at which time the claim would be paid at the rate of $1,200 per month. At the time of the confirmation hearing, however, Maynard Savings Bank did not have an allowed secured claim. In fact, it had no claim at all. Absent any subsequent events, the $1,200 earmarked for Maynard Savings Bank would not be paid under the plan.[1] Since Maynard Savings Bank did

---

1. Maynard Savings Bank states in its brief that Debtor's plan "provides for payment to MSB outside the plan. While the Trustee is not allowed to make any payments under the plan to non-allowed claims, nothing prohibits MSB from receiving payments outside of the

not have an allowed secured claim, the $1,200 per month earmarked for the Bank in the plan becomes disposable income for administration by the Trustee and payable to other creditors. This Court has concluded that Debtor does not have sufficient funds to satisfy the base plan. Debtor claims $342.30 available to fund the base plan requiring $550 per month. However, with the $1,200 no longer payable to Maynard Savings Bank, Debtor then has adequate disposable income to make all payments under the plan and the plan becomes feasible.

The posture of this case, at the close of the confirmation hearing, would reflect that Maynard Savings Bank did not have an allowed secured claim. Therefore, its objections to its treatment as an oversecured claim are not only not supported by existing law but also become irrelevant to any analysis relating to confirmation of the proposed Chapter 13 plan. Secondly, as Maynard Savings Bank had no allowed secured claim, the feasibility objections lodged by the Trustee and the IRS, which were valid, no longer are compelling since Debtor providently has an additional $1,200 of disposable income per month to pay toward allowed secured claims. Therefore, at the end of the hearing on confirmation, Debtor's plan was confirmable for the reasons stated here.

However, this analysis does not include consideration of the Bank's late-filed claim. This proof of claim was filed on November 5, 2001, six days after final confirmation hearing. Determining how to treat this untimely filed secured claim is conceptually difficult. Under 11 U.S.C. § 502(a), a claim, proof of which is filed under § 501

of this title, is deemed allowed unless an objection is filed by a party-in-interest. The Code language is clear that a tardily filed claim is not allowable unless no objection is lodged to the tardily filed claim. Under the circumstances presented in this case, no objections have been filed to the untimely claim of Maynard Savings Bank. However, by the same token, the claim was filed so late that the objecting parties at the time of confirmation hearing had no opportunity to present their position or argue to the contrary.

It is the conclusion of this Court, therefore, that the parties-in-interest should be provided an opportunity to evaluate their respective positions under this opinion and lodge an objection to this untimely filed claim if they elect to do so. If an objection is lodged, the Code is clear that the claim is not allowable since neither of the two exceptions provided in 11 U.S.C. § 502(b)(9) apply. The admittedly peculiar conclusions to be drawn from all this is that if a party-in-interest objects to the untimely claim of Maynard Savings Bank, the plan, as proposed by Debtor, is confirmable for the reasons described. If no objections are lodged to the untimely claim of Maynard Savings Bank, the claim becomes allowable. However, as described, including treatment of the Bank's claim in the Plan exceeds Debtors' disposable income and the plan is not confirmable on feasibility grounds. If this contingency occurs, the case will be dismissed.

**WHEREFORE,** the Court sets a deadline within which the parties shall file any objection to the untimely-filed claim of

plan ..." The Bank's categorization of payments inside and outside of the plan incorrectly categorizes the methodologies of payment. The claim of Maynard Savings Bank is addressed in the plan and the provisions of payment are, therefore, an enforceable part of

the plan. The fact that payments by Debtor are proposed to be made directly to Maynard Savings Bank, not to the Chapter 13 Trustee, does not change its status as a claim treated under the plan.

Maynard Savings Bank as **January 4, 2002** at **4:00 p.m.**

**FURTHER,** if an objection is lodged to this claim by the said date and time, the Court will treat the same in a manner consistent with this opinion.

**FURTHER,** if no objection to the late filed claim is filed by the said date and time, the Court will treat the claim and plan in a manner consistent with this opinion.