**In re RONNIE DOWDY, INC., Debtor.**

**No. 1:02–BK–14313 E.**

United States Bankruptcy Court,
E.D. Arkansas,
Batesville Division.

Aug. 16, 2004.

Frederick S. Wetzel, III, Little Rock, AR, for Debtor.

Fletcher Jackson, for the IRS.

### ORDER SETTING EVIDENTIARY HEARING ON MOTION TO SETOFF TAX REFUND

AUDREY R. EVANS, Chief Judge.

Now before the Court is the United States' Motion to Set Off[1] Tax Refund ("**Motion**"), filed on behalf of the Internal Revenue Service ("**IRS or Government**"). Ronnie Dowdy, Inc. filed a Response to the Motion, and a hearing was held on June 15, 2004. Fletcher Jackson, Assistant United States Attorney, appeared on behalf of the IRS, and Frederick S. Wetzel, III appeared on behalf of Ronnie Dowdy, Inc. ("**Debtor**"). Following the acceptance of certain documents into evidence and arguments of counsel, the Court took this matter under advisement.

### FACTS[2]

On April 17, 2002, Debtor filed a petition under Chapter 11 of the Bankruptcy Code.

---

**1.** The terms "set off," "setoff," and "offset" are synonymous and are used interchangeably in this Order.

**2.** The Court also takes judicial notice of all filed documents in Debtor's current case which are referenced in this Order. *See* Fed. R.Evid. 201; *In re Henderson*, 197 B.R. 147, 156 (Bankr.N.D.Ala.1996) (noting that court

On May 15, 2002, the IRS filed a Proof of Claim for pre-petition federal taxes totaling $950,087.30, of which $836,590.38 was indicated as an unsecured priority tax claim. The May 15, 2002 Proof of Claim stated that it was not subject to any setoff or counterclaim.

Debtor filed its first Chapter 11 Plan of Reorganization ("**First Plan**") on March 7, 2003. The First Plan lists claims of governmental units entitled to priority under 11 U.S.C. § 507(a)(7) as "Class II" claims. The IRS claim at issue in the instant case falls under this class. Section III, paragraph 3.02 of the First Plan treats Class II claims as follows:

> Class II Claims (taxes) shall be paid in full in the ordinary course of business, or as agreed between the parties, or over a period not to exceed six years after the date of assessment of such Claim, of the value, as of the Effective Date of the Plan, equal to the amount allowed of such Claim. The Debtor proposes to offset the Internal Revenue Services's Claim with its fuel tax refunds. After applying the offset, the Debtor believes it will owe the Internal Revenue Service $289,846.00. This priority claim will be paid over 72 months with four percent (4%) and a monthly payment of $4,535.00 if the IRS agrees. The same treatment will be given to the FICA claim of $10,083.00 with IRS acceptance. The priority claim owed the insurance company providing Debtor's benefits is $117,762.00. This Claim will be paid over 60 months with four percent (4%) interest in equal payments of $2,169.00.

The IRS filed an amendment to its May 15, 2002 Proof of Claim on March 13, 2003. ("**First Amended Claim**"). This First Amended Claim listed the total amount of the claim as $418,299.94, of which $303,615.58 was listed as an unsecured priority tax claim. The First Amended Claim also stated that it was not subject to any setoff or counterclaim.

The IRS filed an Objection to Confirmation of the Plan ("**Objection**") on April 7, 2003. The IRS objected to the First Plan for various reasons and proposed supplementing the First Plan with additional language providing for remedies in the event of a default. The Objection also included the following statement in paragraph 4:

> The debtor's proposed plan of reorganization is defective because it fails to provide for the Internal Revenue Service's priority claim under 11 U.S.C. § 507(a)(8) to be paid in deferred cash payments, with interest, in the allowed amount of the claim within six years of the date of assessment as required by 11 U.S.C. § 1129(a)(9)(C). The debtor's plan states that the amount of the Service's priority claim is $289,846.00, after the offset of fuel tax refunds. As stated above, the Service's unsecured priority claim is $303,615.58. To date an offset has not occurred and until such offset is approved and completed, the Service cannot agree to accept less than full payment of the unsecured priority claim as reflected in the Service's Amendment No. 1 to Proof of Claim. In addition, the debtor only proposes interest at a rate of 4%.

On May 5, 2003, the IRS filed a second amendment to the May 15, 2002 Proof of Claim ("**Second Amended Claim**"). This Second Amended Claim listed the amount of pre-petition federal taxes owed as $418,299.94 and stated the amount of the

may take judicial notice of its own orders and of records in a case before the court, as well as of documents filed in another court) (cita-

tions omitted); *see also In re Penny*, 243 B.R. 720, 723 n. 2 (Bankr.W.D.Ark.2000).

unsecured priority claim as $269,778.58. The Second Amended Claim also stated that "this claim is not subject to any setoff or counterclaim, except $33,837.00." This amount was listed as a secured claim.

On June 13, 2003, Debtor filed its First Amended Chapter 11 Plan of Reorganization ("**First Amended Plan**"). The First Amended Plan again states that claims of governmental units entitled to priority under 11 U.S.C. § 507(a)(7) are "Class II" claims. In the First Amended Plan, Section III, paragraph 3.02 treats such Class II claims as follows:

Class II Claims (taxes) shall be paid in full in the ordinary course of business, or as agreed between the parties, or over a period not to exceed six years after the date of assessment of such Claim, of the value, as of the Effective Date of the Plan, equal to the amount allowed of such Claim. This priority claim will be paid over 72 months with four percent (4%) interest and a monthly payment. The same treatment will be given to the FICA claim of $10,083.00. The priority claim owed the insurance company providing Debtor's benefits is $117,762.00. This Claim will be paid over 60 months with four percent (4%) interest in equal payments of $2,169.00.

The references to offsetting taxes owed against Debtor's tax refunds, which were present in the First Plan, were deleted in the First Amended Plan.

On July 17, 2003, the IRS filed an Objection to Confirmation of Debtor's First Amended Plan of Reorganization. The IRS objected to the First Amended Plan for various reasons and proposed supplementing the First Plan with additional language providing for remedies in the event of a default. The IRS made no mention of any setoff issues in this Objection.

On September 4, 2003,[3] Debtor mailed an amended return for the 2001 tax year to the IRS. This amended return indicated a tax overpayment in the amount of $148,068.00. The IRS subsequently determined that there was, in fact, a tax overpayment available in Debtor's account for the 2001 tax year.

On October 6, 2003, the IRS filed an additional amendment to the May 15, 2002 Proof of Claim ("**Third Amended Claim**"). In the Third Amended Claim, the IRS stated the amount of pre-petition federal taxes owed as $472,288.47. It also stated that:

[t]he United States has the right of setoff or counterclaim(s) in the amount of $33,837.00. The identification of the right of setoff in this amount is based on available data and is not intended to waive or limit the right to setoff against this claim debts owed to this debtor by this or any other federal agency that have [sic] not been identified. All rights of setoff are preserved and will be asserted to the extent lawful.

On October 21, 2003, Debtor filed its Second Amended Chapter 11 Plan of Reorganization ("**Second Amended Plan**"). The Second Amended Plan again states that claims of governmental units entitled to priority under 11 U.S.C. § 507(a)(7) are "Class II" claims. In the Second Amended Plan, Section III, paragraph 3.02 treats such Class II claims as follows:

Class II Claims (taxes) shall be paid in full in the ordinary course of business, or as agreed between the parties, or over a period not to exceed six years after the date of assessment of such Claim, of the value, as of the Effective Date of the Plan, equal to the amount

---

**3.** Based on the documentary evidence, it appears that Counsel for Debtor misspoke when he stated that this amended return was filed in 2004.

allowed by the Court for such Claim. The interest rates on these claims are six percent (6%) for the IRS and five percent (5%) for the DF & A or other state priority claims.

The total amount owed to the IRS is listed in the Second Amended Plan as $323,767.11. There was no reference to offsetting taxes owed against Debtor's tax refunds in the Second Amended Plan. Article XII of the Second Amended Plan stated "[w]hen the order confirming the Plan becomes final, all claims and interests of creditors, whether filed or unfiled, and liens and encumbrances, except those liens and encumbrances set forth in the Plan, will be released, discharged and extinguished."

On October 22, 2003, Counsel for Debtor filed an affidavit indicating that he mailed, on that same day, a copy of the Second Amended Plan to Counsel for the IRS, Mr. Jackson. Two days later, on October 24, 2003, Counsel for the Debtor filed an affidavit indicating that he mailed, on that same day, a copy of the Amended Notice of Hearing regarding this Second Amended Plan to Counsel for the IRS, Mr. Jackson. The Amended Notice of Hearing stated that deadline for filing objections to the Second Amended Plan was November 10, 2003. The Arkansas Department of Finance and Administration ("**Arkansas DF & A**") filed an Amended Objection to the Second Amended Plan, requesting, *et. al.,* the inclusion of language in the Second Amended Plan preserving its right to setoff and recoupment as to the reorganized Debtor. The IRS did not file an objection to the Second Amended Plan. Instead, it filed a Ballot Accepting the Second Amended Plan.

On November 24, 2003, the Court entered an Order Confirming this Second Amended Plan ("**Confirmation Order**"). This Confirmation Order modified the treatment of Class II claims in the Second Amended Plan by stating that "[n]otwithstanding any provision in the confirmed plan, or any amendment thereto, nothing shall impair the Arkansas DF & A's rights of set-off and recoupment as to the reorganized debtor." No language regarding IRS setoff rights was included in the Confirmation Order.

### LAW AND DISCUSSION

The issue before the Court is whether the IRS can setoff its claim against a tax refund currently owing to Debtor. The IRS requests, under 11 U.S.C. § 553 [4] and 26 U.S.C. § 6402, that it be permitted to setoff the tax overpayment available in Debtor's account against Debtor's tax liability. Debtor argued that the IRS should not be permitted to exercise this right to setoff because of conduct inconsistent with that right and because the Confirmed Plan is now *res judicata.*

Following opening arguments by both sides, the Court inquired of government counsel how the government planned to address the issue of *res judicata.* After a discussion on the record between the parties and the Court on the question of *res judicata,* the Court stated it would permit both sides to enter documents or testimony into evidence. Neither side presented any testimonial evidence, but both sides entered documentary evidence without objection. Although neither party cited any case law in support of their respective positions, "[t]he issue of setoff by a creditor following confirmation of a Chapter 11 or Chapter 13 Plan has been the subject of

---

**4.** All further references to code sections pertain to the Bankruptcy Code, Title 11, unless   otherwise noted.

considerable debate among the circuits and various bankruptcy courts." *In re Holder,* 182 B.R. 770, 773 (Bankr.M.D.Tenn.1995)

## I.  Elements of Right to Setoff

■ Prior to addressing the issue of whether setoff can survive confirmation, the Court must first determine whether the IRS has shown it has the right to setoff. To demonstrate this right, the IRS must prove under § 553 that:

1.  A debt exists from the Government to the Debtors and that debt arose prior to the commencement of the bankruptcy case;

2.  The Government has a claim against the Debtors which arose prior to the commencement of the bankruptcy case;

3.  The debt and the claim are mutual obligations; and

4.  That the Government would have the right to offset the debt under non-bankruptcy law.

*In re Krause,* 261 B.R. 218, 222 (8th Cir. BAP 2001) (citation omitted).

■ All elements of setoff are met in this case. The IRS setoff right exists under applicable non-bankruptcy law pursuant to 28 U.S.C. § 6402(a). As stated in the pleadings, the parties do not dispute that the debt owing to the IRS arose prepetition. Moreover, "[t]he majority of courts hold that a taxing authority's obligation to pay a refund arises on the last day of the tax year at issue." *In re Ramirez,* 266 B.R. 441, 444 (Bankr.D.Minn. 2001) (citations omitted). Under this logic, the IRS obligation to pay a refund for the 2001 tax year to Debtor arose on December 31, 2001, prior to the filing of the instant petition, not when the amended return was submitted. Additionally, the IRS and Debtor are in the relationship of taxing authority and taxpayer with regard to the monies at issue here, an unpaid tax refund to be offset against an unpaid tax liability. Therefore the debt and claim meet the mutuality requirement. *See Id.* at 444 (citation omitted) ("In order for the debts to be mutual, they must be between the same parties standing in the same capacity."). Although the setoff right exists, the Court must still determine whether the Government has waived that right, as explained later in this Order. However, before discussing waiver, the Court will explore the relationship between setoff and plan confirmation.

## II.  Setoff and Confirmed Plans

■ Opinions regarding the relationship between the setoff provision, § 553, and the plan confirmation provisions, §§ 1141 and 1327, vary widely. Some courts have found that the language of § 553 (providing, subject to certain exceptions, that Title 11 does not affect a creditor's setoff rights) trumps or conflicts with the plan confirmation provisions of Chapters 11 and 13, and these courts have granted post-confirmation setoffs. *See, e.g., Carolco Television Inc. v. National Broadcasting Co. (In re De Laurentiis Entertainment Group, Inc.),* 963 F.2d 1269, 1276–77 (9th Cir.1992) (reasoning that §§ 553 and 1141 are in conflict and giving priority to setoff provision of § 553); *United States v. Munson,* 248 B.R. 343, 346–47 (C.D.Ill.2000) (IRS did not lose its right to setoff prepetition income tax refund payable to debtor against debtor's prepetition tax liability from another tax year, despite IRS failure to object to debtor's reorganization plan, since giving precedence to Chapter 13 confirmation provision "would ignore and render meaningless the plain language of § 553."); *In re Womack,* 188 B.R. 259, 262 (Bankr.E.D.Ark.1995) (citations omitted) (holding that, based on plain language of § 553, confirmation of Chapter 13 plan providing for full payment of IRS debt did

not preclude IRS from setting off refund against tax debt).

Other courts have concluded that the plan confirmation provisions take precedence and have denied setoff post-confirmation. *See, e.g., In re Continental Airlines,* 134 F.3d 536, 541 (3d Cir.1998) (finding unpersuasive government argument that § 1141 may be disregarded when setoff asserted post-confirmation and holding that failure by creditor to exercise right of setoff before confirmation extinguishes that right); *In re Lykes Bros. Steamship Co.,* 217 B.R. 304, 310 (Bankr. M.D.Fla.1997) (concluding that §§ 553 and 1141 are in conflict and that the provisions of § 1141 take precedence); *United States v. Driggs,* 185 B.R. 214, 215 (D.Md.1995) (stating that "[§§ 533 and 1141] are in irreconcilable conflict" and upholding bankruptcy court's determination that § 1141 takes priority over setoff provision of § 553).

The construction of any statute, including those statutes which comprise the Bankruptcy Code, "begins with the language of the statute itself." *In re Hen House Interstate, Inc.,* 177 F.3d 719, 722 (8th Cir.1999) (citations omitted), *aff'd sub nom., Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). If the language of the Bankruptcy Code is clear and unambiguous, the Court's function is "to enforce [that language] according to its terms." *Id.* at 722–23 (citations and internal quotations omitted). Section 553(a) provides, in relevant part, as follows:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

This statute clearly provides that, subject to the exceptions as enumerated, the provisions of "this title," *i.e.* Title 11, which is the Bankruptcy Code, do not apply to setoffs. There is no ambiguity in the language of § 553(a) on this point. The provisions in the Bankruptcy Code that do not apply to setoffs necessarily include those provisions establishing the effects of plan confirmation, §§ 1327 and 1141. Applying this reasoning to the case at bar, the confirmation of Debtor's plan does not affect the Government's setoff rights, since the provisions of § 1141 discussing the binding nature of a confirmed plan do not apply to § 553. This view of § 553 is in accord with prior decisions in the Bankruptcy Court for the Eastern and Western Districts of Arkansas. *See Womack,* 188 B.R. at 262; *In re Warwick,* 179 B.R. 582, 584–85 (Bankr.W.D.Ark.1995); *In re Tillery,* 179 B.R. 576, 578–79 (Bankr.W.D.Ark. 1995).

### III. Waiver of Right to Setoff

What these Arkansas cases do not address, however, is whether that right to setoff may be waived, even if plan confirmation provisions do not affect setoff. A waiver is "the intentional relinquishment of a known right." *In re South Park Care Associates, Inc.,* 203 B.R. 445, 448 (Bankr. W.D.Mo.1996) (citations and internal quotation omitted). Some courts have found that the Government, even if it has the right to setoff, can waive that right through its conduct. *See Holder,* 182 B.R. at 776 (citation omitted) ("Furthermore, it is clear from other cases that the government, as a creditor, can be found to have waived its right to setoff."); *In re Britton,* 83 B.R. 914, 921 (Bankr.E.D.N.C.1988) (reasoning in Chapter 12 case that if right

to setoff not timely and properly exercised by government, that right is waived and finding that filing proof of claim without asserting setoff right constituted waiver of setoff); *South Park,* 203 B.R. at 448 (noting that even a creditor which is a government agency may waive its right to setoff by "conduct inconsistent with exercising [that right]."); *Lykes Bros. Steamship Co.,* 217 B.R. at 313 (reasoning that party may waive right to setoff by its conduct).

The Bankruptcy Appellate Panel for the Eighth Circuit ("**BAP**") in *In re Krause* discussed the issue of a government waiver of its right to setoff. The BAP upheld the bankruptcy court's findings of fact in a Chapter 12 case that the government did not waive its right to setoff where it raised the issue of setoff in objections to the first proposed plan and the amended plan and filed an amended proof of claim asserting its setoff rights. *Krause,* 261 B.R. at 223. Although the BAP ultimately reversed the bankruptcy court's denial of setoff, finding that the government's setoff rights "cannot be modified or denied due to 'compelling circumstances,'" implicit in the BAP's opinion is a ratification of waiver as a possibility, depending on the facts and circumstances of a particular case. *See id.* Moreover, as one court noted, "[e]ven considering, without concluding that the Government's right to setoff was not barred by *res judicata,* this Court would still have to consider the issue of whether the Government waived its right to setoff." *Lykes Bros. Steamship Co.,* 217 B.R. at 311–12.

The Court of Appeals for the First Circuit in *In re Calore Express Co.,* 288 F.3d 22 (1st Cir.2002) analyzed in detail the possibility that the Government could, through its conduct, waive its setoff rights. The First Circuit articulated certain guiding principles on this point: (1) creditors, including agencies of the federal government, in bankruptcy proceedings may expressly waive their setoff rights, such as through a writing; (2) waiver may be implied from creditors' conduct, provided that such conduct fairly demonstrates creditors' intent; and (3) creditors can generally rescind an express or implied waiver of setoff rights, although that rescission may be limited by estoppel.[5] *Calore,* 288 F.3d at 38–39 (citations omitted). Following a detailed discussion of the facts and findings of the lower courts, the First Circuit remanded the case for an evidentiary hearing and further factual findings regarding whether the Government's conduct constituted waiver. *Id.* at 38–43.

There appears to be no controlling authority in the Eighth Circuit on the waiver of the right to setoff in light of a confirmed plan. It is clear, however, that the Bankruptcy Code "preserves whatever setoff rights a party has outside of bankruptcy." *South Park,* 203 B.R. at 447 (footnote omitted). It is therefore logically consistent that the Code would also preserve, as a corollary to the preservation of setoff rights, any defenses to those rights that existed outside of the bankruptcy. The court in *South Park* did, in fact, undertake an analysis of waiver, even though it al-

---

**5.** The First Circuit noted, however, that it may be quite difficult to apply estoppel against the Government, since a showing of affirmative misconduct would be required. *See Calore,* 288 F.3d at 39 n. 7 (citations omitted). The Eighth Circuit also requires a demonstration of affirmative misconduct to estop the Government. *See Morgan v. Commissioner,* 345 F.3d 563, 566 (8th Cir.2003) (citations omitted) ("In addition to establishing the traditional elements of estoppel, a party seeking to estop the government must first establish that it engaged in affirmative misconduct."). The Eighth Circuit noted that a party alleging affirmative misconduct has "a heavy burden to carry." *Id.* (citation omitted).

ready found that "[s]etoff is not in any way affected by the confirmation process." *Id.* at 448 (citation omitted). Therefore, in light of the aforementioned case law, particularly *Calore, Krause,* and *South Park,* the Court finds that it should consider whether the Government has waived its rights to setoff.

 In the case at bar, however, the Court finds that there is insufficient evidence to render a determination regarding waiver of the Government's setoff rights. The Court notes that it made comments on the record indicating that the *res judicata* nature of the confirmed plan may preclude the setoff. It is clear that these statements may have operated to discourage the parties from entering evidence into the record in addition to the documents presented at the hearing. It is therefore appropriate to provide the parties an opportunity to present additional evidence.

Accordingly, the Court will hold an evidentiary hearing on the issue of waiver. The Court will hear evidence and argument from both parties on the Government's conduct and whether such conduct resulted in a waiver of setoff rights. The Court will consider any further evidence adduced in this hearing in light of section 5.17.10.9.4.3 of the Internal Revenue Manual (IRM) which states that there is a circuit split on the issue of setoff and plan confirmation and suggests that "when IRS knows it has setoff rights *or is uncertain at Plan confirmation whether it has setoff rights* . . . the IRS should request that the Chapter 11 Plan provide specifically that the setoff rights of the IRS, if any, are not impaired by the Plan." IRM § 5.17.10.9.4.3(2)(b) (2000) (emphasis added). The Court is aware that procedures delineated in the IRM create no substantive rights for taxpayers. *See Carlson v. United States,* 126 F.3d 915, 922 (7th Cir. 1997) (citation omitted) ("Procedures in the

Internal Revenue Manual are intended to aid in the internal administration of the IRS; they do not confer rights on taxpayers."). However, the Court will consider this provision of the IRM as evidence of the Government's own awareness of this controversy in setoffs.

Accordingly, for the reasons stated herein, it is hereby

**ORDERED** that an evidentiary hearing will be set by subsequent notice after conferring with the parties. At that hearing, the Court will hear evidence and argument from both parties on the Government's conduct and whether such conduct resulted in a waiver of setoff rights.

**IT IS SO ORDERED.**